Cheshire
No. 84-119

THE STATE OF NEW HAMPSHIRE

v.

PAUL CAMPBELL

August 15, 1985

*Peter W. Mosseau,* acting attorney general (*Andrew L. Isaac,* assistant attorney general, on the brief), by brief for the State.

*James E. Duggan,* appellate defender, of Concord, by brief for the defendant.

SOUTER, J.   The defendant stands convicted of aggravated felonious sexual assault committed upon his nine-year-old stepdaughter. RSA 632-A:2, XI (Supp. 1983). He claims that he was deprived of due process of law, the equal protection of the law and effective assistance of counsel, all as guaranteed by the Constitution of the United States, when the Superior Court (*Contas,* J., and *Dalianis,* J.) denied two pre-trial motions for the appointment at State expense of a child psychiatrist to assist him. *See* RSA 604-A:6 (Supp. 1983). We affirm.

Until April 1982, the defendant lived in Rindge with his wife, their six-year-old daughter, and his adopted stepdaughter, the victim in this case. Because of marital difficulties, on April 19, 1982, the defendant left for Florida, taking the daughter of the marriage with him. The victim, who remained with her mother, was lonely and depressed without the companionship of her half-sister, and her mother took her to a counselor in "organizational and personal development," for help in relieving her unhappiness. Between June 25 and July 16, 1982, the counselor met with the victim in three twenty-minute sessions, during which the victim made no mention of sexual abuse, although she did express some resentment toward the defendant.

On July 26, 1982, the victim heard her mother speaking on the telephone, mentioning the name of the victim's half-sister and the subject of incest. The victim then wrote and handed her mother a note describing an act of sexual penetration perpetrated upon her by the defendant. The mother immediately called the police, to whom the victim described repeated acts of intercourse and one act of fellatio with the defendant, committed over the course of two years. Nonetheless, a physician who examined the victim found that her hymen was intact. Although he concluded from this, and later testified, that no penetration of the victim's vagina beyond one half inch could have occurred, he agreed that it would ordinarily be impossible to tell whether a penis had penetrated the victim's mouth.

On January 13, 1983, the defendant was indicted for causing the victim to perform an act of fellatio upon him between November 6 and 26, 1981. Prior to the jury trial at which he was convicted, the defendant moved for authorization to obtain ancillary services at State expense under RSA 604-A:6 (Supp. 1983). So far as it is relevant to this appeal, he twice sought the appointment of a child psychiatrist "to assist in the evaluation of the evidence that has been gathered to date."

He identified that evidence as the report of the victim's counselling sessions, in which she made no mention of sexual abuse. It appears that after the indictment, the counselor had prepared a one-page report summarizing the victim's communications to her but making no comment on the significance of the victim's silence about sexual abuse. In the defendant's second motion for funds to hire a psychiatrist, he alleged that the counselor had stated that she was unqualified to give an opinion on the significance of the victim's silence, considered in the light of her subsequent accusations.

The trial court refused to authorize funds for the psychiatrist, and

the defendant did not obtain access to one. At trial his counsel impeached the victim's credibility by establishing that she often lied; that she had made no allegations of sexual abuse until three months after the defendant had left; that she had read books describing sexual acts; that it was highly improbable on the medical evidence that the victim had had sexual intercourse with the defendant; and that the victim understood that her accusation might well cause the return of the defendant and her half-sister, whom she missed. The impeachment was unavailing, however, and the defendant claims that his conviction is tainted by the trial court's constitutional error in refusing to provide him with the services of a child psychiatrist to assist him in preparing to impeach the victim's credibility.

██ In passing upon requests of indigent defendants for access to services of experts other than counsel it has not mattered whether the claims were grounded on the sixth or fourteenth amendments of the Constitution of the United States. *See, e.g., Williams v. Martin,* 618 F.2d 1021, 1027 (4th Cir. 1980); *Mason v. State of Arizona,* 504 F.2d 1345, 1352 (9th Cir. 1974), *cert. denied,* 420 U.S. 936 (1975). Whether a defendant has invoked equal protection, fundamental fairness necessary for due process, or the right to services to enable his counsel to assist him effectively, an indigent defendant's access to experts has been said to lie within the sound discretion of the court. *Williams v. Martin, supra* at 1026. To warrant a favorable exercise of that discretion, it is not enough merely to allege in general or conclusory terms that expert services would be helpful, *United States v. Ready,* 574 F.2d 1009, 1015 (10th Cir. 1978); *Mason v. Arizona, supra* at 1352–53; *see Ake v. Oklahoma,* 105 S. Ct. 1087, 1096–97 (1985). Rather, a defendant must demonstrate by reference to the facts and circumstances of his particular case that the assistance he seeks is necessary "to insure effective preparation of [his] defense by [his] attorneys." *Mason v. Arizona, supra* at 1351 (footnote omitted).

██ Most recently the Supreme Court of the United States has held that the necessity for expert services is to be determined by weighing their probable value against the risk of an erroneous deprivation of life or liberty if the services are not provided. *Ake v. Oklahoma, supra* at 1094. The analyses of probable value and risk must necessarily focus on the relationship between the subject of the expert services and the issues in the case. As a general rule, necessity may be found if the expert would advise or testify on a matter directly in issue, *Williams v. Martin, supra* at 1026; and the showing of necessity will obviously be strongest if the testimony of an

expert is essential to establish a matter in issue or could be conclusive on that issue, *see Little v. Streater*, 452 U.S. 1, 7–8 (1981); *Bowen v. Eyman*, 324 F. Supp. 339, 340 (D. Ariz. 1970).

■ Applying these general rules to requests for access to psychiatric services, it is clear that the requirement of necessity is satisfied when the defendant seeks those services on the issue of his sanity in a criminal case. In such a case, "the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense." *Ake v. Oklahoma, supra* at 1095; *Bush v. McCollum*, 231 F. Supp. 560, 565 (N.D. Tex. 1964), *aff'd sub nom. McCollum v. Bush*, 344 F.2d 672 (5th Cir. 1965).

When a defendant's mental state is not in issue, however, the calculation of need may well be markedly different. "A defendant's mental condition is not necessarily at issue in every criminal proceeding, . . . and it is unlikely that psychiatric assistance of the kind we have described would be of probable value where it is not." *Ake v. Oklahoma*, 105 S. Ct. at 1096–97.

■ This statement may reflect the sound judicial reluctance to admit psychiatric testimony offered to impeach the credibility of a witness at trial, a reluctance that is relevant to the decision of the present case. *See, e.g., United States v. Fosher*, 590 F.2d 381 (1st Cir. 1979); *cf. United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied*, 416 U.S. 959 (1974) (psychiatric testimony may be received more readily on competency of witness than on credibility). While there is no absolute bar to such testimony on credibility, *see United States v. Moten*, 564 F.2d 620, 629 (2d Cir.), *cert. denied*, 434 U.S. 959 (1977); *United States v. Hiss*, 88 F. Supp. 559, 559 (S.D.N.Y.), *aff'd on other grounds*, 185 F.2d 822 (2d Cir. 1950), *cert. denied*, 340 U.S. 948 (1951), we adhere to the better rule that would normally exclude it on the ground that such testimony carries prejudicial risks that are likely to outweigh any probative value. *See United States v. Fosher supra.*

There are two complementary reasons for this conclusion. First, the aura of importance that surrounds expert testimony would raise the risk that jurors in such cases would surrender their responsibility to use their own common sense in judging a witness's credibility. *United States v. Fosher, supra* at 383; *United States v. Barnard, supra* at 912. This risk could not be tempered effectively by instructing a jury to be critical in considering the basis for the psychiatrist's credibility judgment, because it is virtually impossible for a witness to describe fully the basis for a judgment as subtle as a judgment about credibility. *See Walker v. Walker*, 106 N.H. 282, 285, 210 A.2d 468, 470–71 (1965); *Hardy v. Merrill*, 56 N.H. 227, 242

(1875). Since our experience leaves us with a high opinion of a jury's ability to deal unaided with issues of credibility, we would not take the risk of diluting a jury's sense of responsibility to judge independently.

The second reason to fear prejudice is that allowing psychiatric testimony on such issues would tend to produce what has been called a trial within a trial. *United States v. Fosher, supra* at 383–84; *United States v. Barnard, supra* at 912. The psychiatrist and his opinion would tend to become significant focuses of the case, and thus to obscure the matters principally in issue. If this would be a risk with one psychiatric witness, it would be a certainty with two. And two there would be in any significant case. The defense expert would be followed on rebuttal by the prosecution's expert, and the issue of a primary witness's credibility would then turn on the jury's choice of which expert witness to believe. In such circumstances there would be little chance that the psychiatric testimony would actually provide that assistance to the jury which is the justification for admitting expert testimony in the first place. *See Dowling v. Shattuck*, 91 N.H. 234, 17 A.2d 529 (1941).

■■ Since psychiatric testimony on issues of witness credibility will therefore generally be excluded, it is difficult to demonstrate the requisite necessity for psychiatric advice on credibility issues before trial. It is likewise difficult to demonstrate on appeal that a trial court committed constitutional error in refusing to authorize the use of public funds for access to a psychiatrist for this purpose. For in order to demonstrate such constitutional error in a State court trial, an appealing defendant must satisfy two criteria by clear and convincing evidence:

1. The defendant must demonstrate that, when trial counsel requested authorization to obtain the expert services at public expense, he made as complete a showing of necessity as could then be expected.
2. The defendant must demonstrate that the denial or restriction of funds substantially prejudiced him at his State court trial.

*Mason v. Arizona*, 504 F.2d at 1352; *State v. Anaya*, 456 A.2d 1255 (Me. 1983). (*See id.* at 1262 for collection of cases following *Mason* standard.)

The defendant in the present appeal has not satisfied either element of the *Mason* standard. We will not dwell on the first criterion beyond noting that the defendant's counsel never went beyond a general assertion that a psychiatric expert would be helpful in interpreting the psychologist's evidence, since both the psychologist and defense counsel himself were unqualified to assess its signifi-

cance. While we cannot expect defense counsel to indicate what an expert will find before the expert has had a chance to find it, *see Williams v. Martin*, 618 F.2d at 1026–27, it is reasonable to require the defense to articulate some basis beyond general hope that an expert might be helpful in trial preparation. In the absence of some explanation, a court can expect that counsel will have some preliminary conversation with the expert, who can indicate such possibilities of fruitful inquiry as he then foresees.

What is more obvious is that the defendant can demonstrate no substantial prejudice from the trial court's denial of his motion. The most he ever asked for was an expert to examine the counselor's short report of the three twenty-minute interviews. To say the least, this would have been scant foundation for any expert's opinion on the credibility of the subject of those interviews, and any such opinion would most probably have been excluded from evidence. Even if we assume that the psychiatrist would have gone on to examine the victim personally, there is strong reason to believe that his opinion on her credibility would still have been excluded in this case. The jury had an opportunity to observe the victim at first hand, and defense counsel availed himself extensively of the opportunity to impeach the victim's credibility. These circumstances would not have supported a departure from the general rule we have discussed above, disfavoring psychiatric impeachment testimony.

■ Thus, the most the defendant probably could have obtained from any psychiatrist was an inadmissible opinion on a subject that was fully developed on the evidence before the jury. This conclusion precludes any finding of prejudice. There was no error.

*Affirmed.*

All concurred.