Grafton
No. 92-676

THE STATE OF NEW HAMPSHIRE

v.

WAUNITA HUARD AND ARTHUR E. GOULD, III

March 3, 1994

*Jeffrey R. Howard*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendants.

BROCK, C.J. Defendant Arthur E. Gould, III was convicted of aggravated felonious sexual assault of a nine-year-old boy in violation of RSA 632-A:2, XI (1986) (current version at RSA 632-A:2, I(l) (Supp. 1993)). Based on the same incidents, defendant Waunita Huard was convicted of endangering the welfare of a child in violation of RSA 639:3, III (1986), and criminal liability for the conduct of another in violation of RSA 626:8 (1986).

On appeal, the defendants claim multiple errors in the conduct of their trial in Superior Court (*Morrill*, J.), but we need consider only two: (1) that a social worker testified about the credibility of the victim's allegations of abuse; and (2) that a police officer testified about the victim's prior consistent statements about the incidents of abuse. We reverse and remand for a new trial.

At the time of the alleged incidents of sexual abuse, Waunita and Norman Huard were separated and in the process of a bitter divorce including disputes over visitation. Norman and Waunita had joint legal custody of their two children and her son, Jessie, and Norman, who was Jessie's stepfather, had physical custody of all three children. Waunita was living with Arthur Gould in a small apartment where Waunita's three children visited on weekends. At trial, Jessie testified that Gould sexually assaulted him, with Waunita's assistance, twice during the weekend after Thanksgiving in 1990, while all of the children were visiting.

Jessie first alleged abuse by the defendants after Norman found him on a bed, in sexually suggestive circumstances, with the nine-year-old daughter of the woman with whom Norman was living. When questioned by Norman and the girl's mother about his behavior, he explained that his mother and Gould had told him "how to touch a woman." Jessie then said that he was lying and seemed afraid to talk about it. The guardian ad litem, who had been appointed during the divorce proceedings, referred Norman to a social worker. When the social worker met with Jessie and Norman, the

social worker first attempted to interview Jessie alone but included Norman at Jessie's request because Jessie was upset. Jessie told the social worker, with Norman present, that Gould had called him into the bedroom, had anal intercourse with him, and that his mother, Waunita, had pulled Gould off and carried Jessie out of the bedroom. He also said that the defendants warned him not to tell. The social worker later met with Gould and Waunita who denied having any sexual contact with Jessie.

Norman contacted the Laconia and Bristol police, and Officer Robert Gray of the Bristol police interviewed Jessie several times about the incidents. Jessie's account to Officer Gray was that his mother was in the bed but did not help him, and that after each of the assaults, he climbed on a chair to unlock the bedroom door and let himself out of the bedroom. Jessie told Gray that Gould and his mother told him that he should do the same thing to the daughter of the woman living with Norman. Based on the interviews, Gray concluded that Jessie had been assaulted by Gould three or four times during the weekend.

The defendants were tried together on charges related to the alleged sexual assaults of Jessie. After the trial, the defendants unsuccessfully moved to set aside the verdicts and now bring this appeal.

## I. Opinion of the Social Worker

The defendants argue that the trial court erroneously allowed the social worker to give his opinion of the credibility of Jessie's account of sexual assault by the defendants. The contested testimony of the social worker follows:

"Q. Based on your experience and your education in the past on such matters, do you have an opinion as to whether or not Jessie [], whether his story is consistent with that of a child of like years, nine years old, that's been sexually abused?

A. His story is consistent in that what Jessie [] described to me at nine years old is impossible for a nine year old to know about unless they had experienced it. And my opinion is, that Jessie [] experienced exactly what he told me."

The social worker was qualified as an expert witness in child abuse. If the social worker's challenged testimony were interpreted to be his opinion, based on his professional evaluation, as to whether Jessie had been sexually abused, it would not be sufficiently reliable

to be admissible. *See State v. Cressey*, 137 N.H. 402, 407, 628 A.2d 696, 699 (1993). The State agrees that *Cressey* bars the social worker's testimony for that purpose, but argues that the testimony is the social worker's opinion of Jessie's credibility.

 Generally, expert opinion of a witness's credibility is inadmissible because "such testimony carries prejudicial risks that are likely to outweigh any probative value." *State v. Campbell*, 127 N.H. 112, 116, 498 A.2d 330, 333 (1985). The State concedes that the social worker's testimony as an expert opinion on credibility would not have been admissible. Instead, the State argues that the social worker was providing his opinion, not as an expert witness, but based on his common sense. Common sense evaluation of the credibility of witnesses, however, is the province and obligation of the jury. *State v. Reynolds*, 136 N.H. 325, 328–29, 615 A.2d 637, 639 (1992); *Campbell*, 127 N.H. at 116, 498 A.2d at 333; *see also* N.H. R. Ev. 701. The State may not present evidence to preempt the jury's often difficult job of deciding which witnesses are truthful and what evidence is trustworthy. *Reynolds*, 136 N.H. at 328–29, 615 A.2d at 639. Therefore, the social worker's opinion of Jessie's credibility was inadmissible as either an expert or a lay opinion.

The State counters that even if the social worker's opinion was erroneously admitted, it was harmless error because defense counsel had effectively shown that the social worker did not base his opinion on his expertise, and because several other witnesses were allowed to testify about the victim's credibility. We are not convinced beyond a reasonable doubt that the social worker's opinion of Jessie's credibility did not affect the jury's verdict. *See State v. McSheehan*, 137 N.H. 180, 185, 624 A.2d 560, 563 (1993).

 As in many sexual abuse and assault cases, the jury's decision as to the guilt or innocence of the defendants in this case depended upon the credibility of the victim. He was a reluctant witness who required much prompting and support to give his story of the assaults. Some of the details of the assaults, as he described them at trial, were contradicted by his previous versions of the story and by the testimony of other witnesses. At trial, both of the defendants testified and denied Jessie's allegations against them. The testimony of other witnesses presented an equivocal picture of Jessie's credibility. Despite defense counsel's cross-examination of the social worker, his opinion of Jessie's credibility was imbued with authenticity because of his expert status. *See Campbell*, 127 N.H. at 116, 498 A.2d at 333; *cf. Reynolds*, 136 N.H. at 328–29, 615 A.2d at 639. In

addition, the social worker had interviewed both of the defendants, as well as Jessie, so that his opinion of Jessie's credibility suggested that he believed Jessie and disbelieved the defendants. Because of the significance of Jessie's credibility in this case and the potential impact of the social worker's opinion on the jury's verdict, we hold that the erroneous admission of the opinion testimony was not harmless error.

## II. Prior Consistent Statements

Officer Gray, of the Bristol police, interviewed Jessie four times. Before trial, the defendants moved to bar witnesses from repeating Jessie's accounts of the assaults on the grounds that the stories were hearsay and not admissible under any exception. The defendants objected when the State began to elicit testimony from Officer Gray of what Jessie had told him. The trial court ruled that the testimony was admissible pursuant to New Hampshire Rule of Evidence 801(d). At trial, Gray was allowed to testify about Jessie's accounts of the assaults and also to testify that Jessie's story was consistent at all four interviews.

On appeal, the defendants contend that Gray's testimony was inadmissible hearsay, and the State concedes, in light of *McSheehan*, 137 N.H. 180, 624 A.2d 560, that the trial court's ruling based on Rule 801(d) was erroneous. The State argues, however, that the testimony was admissible on other grounds: the common law rule that would admit Jessie's prior consistent statements to rehabilitate his testimony following defense counsel's attempts to impeach and to show inconsistencies in his story. Because this issue is likely to arise again on retrial of this case, we offer the trial court the following guidance.

■ In *McSheehan*, we held that to be admissible under Rule 801(d)(1)(B), prior consistent statements must have been made *before* the witness would have had a motive to fabricate the story. *McSheehan*, 137 N.H. at 185, 624 A.2d at 562. Jessie first told his story of sexual assault to Officer Gray after he was "caught" and questioned about his behavior with his step-father's girl friend's daughter. Therefore, we agree with both the defendants and the State that Jessie's statements to Gray do not fit the requirements of Rule 801(d)(1)(B) and are not admissible as evidence of the substance of the statements.

■ If, on retrial of this case, Jessie's credibility is impeached by the defense introducing his prior inconsistent statements concerning the alleged assaults, his prior consistent statements may be admissi-

ble for the limited purpose of rehabilitating his credibility. *McSheehan*, 137 N.H. at 183, 624 A.2d at 561; *State v. Morales*, 136 N.H. 616, 619–20, 620 A.2d 1034, 1036–37 (1993); *State v. Dean*, 129 N.H. 744, 750, 533 A.2d 333, 337 (1987). Such prior consistent statements may not be used substantively, however, and appropriate limiting instructions would be required to explain to the jury the limited, rehabilitative purpose of the testimony. *Morales*, 136 N.H. at 619–20, 620 A.2d at 1036–37. The distinction between rehabilitation of a witness's credibility as to particular testimony and the truth of the testimony itself is difficult and requires a careful explanation in the limiting instruction. Therefore, the common law rule allowing admission of rehabilitative testimony should be used with caution.

The remaining issues raised by the defendants need not be addressed due to the disposition of this appeal.

*Reversed and remanded.*

All concurred.