Merrimack
No. 2903-209

THE STATE OF NEW HAMPSHIRE

v.

JAMES WELLINGTON

Argued: February 5, 2004
Opinion Issued: April 20, 2004

*Peter W. Heed*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, James Wellington, was convicted by a jury of six counts of aggravated felonious sexual assault, *see* RSA 632-A:2, I(*l*) (1996), II (Supp. 1999), one count of felonious sexual assault, *see* RSA 632-

A:3, III (1996), and one count of indecent exposure and lewdness, *see* RSA 645:1, II(a) (Supp. 1999). The defendant argues that the Trial Court (*McGuire*, J.) erred by: (1) refusing to award him funds to hire an expert on child witness suggestibility to consult with defense counsel; and (2) refusing to allow him to introduce evidence tending to demonstrate the victim's sexual knowledge. We affirm.

The victim, an eight-year-old female at the time, first met the defendant in May 2001 when he helped the victim's mother move into a new apartment. The defendant continued to have contact with the victim and her mother through the church they all attended and in late August 2001, the defendant volunteered to mentor the victim. The victim's mother agreed to let the defendant spend time with the victim. Throughout August and early September the defendant took the victim swimming at Webster Lake and on occasion took her to his house. During that time the defendant touched the victim's genital area while they were swimming.

On one occasion, while at the defendant's house, the victim asked the defendant "where babies come from." The defendant told the victim that it was too hard to explain and that he would show her. He took off his clothes and had the victim take off her clothes. He next got on top of the victim on his bed and touched his penis to her genital area, but said that he could not show her because his penis would not fit into her vagina. He then put his mouth on her genital area and touched her genital area with his hand. After that he masturbated, ejaculated onto her and wiped the semen off with a paper towel. Then he placed his penis inside her mouth.

On the evening of September 11, 2001, the victim's mother went to a meeting and left the defendant to babysit the victim and her friend. After the friend had gone home, the defendant pulled down the victim's pants and underwear and put his mouth on her genital area. Nine days later, on September 20, the victim told her mother what had happened. The victim's mother contacted the police.

Sergeant Norman Ashburn of the Franklin Police Department responded and spoke briefly with the victim and her mother. Ashburn took them to the police station where they met briefly with Officer Nancy Hicks. Neither Hicks nor Ashburn had significant experience interviewing children. On September 24, Anne Pennock of the New Hampshire Division for Children, Youth and Families met with Hicks and together they interviewed the victim. The interview was videotaped and lasted between forty-five minutes and an hour.

Prior to trial, the defendant filed a motion for services other than counsel, pursuant to RSA 604-A:6 (2001), seeking "funds in the amount of $2,000 for the purpose of consulting with Dr. Phillip Esplin, an expert in

the area of child suggestibility and interviewing techniques." The trial court denied the motion. The defendant sought reconsideration, which the court denied.

The defendant first argues that the trial court erred when it denied him the funds necessary to consult with Dr. Esplin for a review of the discovery material and an opinion as to whether false memory implantation may have occurred. The defendant contends that he made a sufficient showing that the interviewers engaged in improper or suggestive interviewing techniques, and he claims violations of his rights to due process, a fair trial, and equal protection. N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, VI, XIV.

We first address the defendant's claims under the New Hampshire Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ Regardless of whether a defendant has invoked equal protection, fundamental fairness necessary for due process, or the right to services to enable his counsel to assist him effectively, an indigent defendant's access to experts has been said to lie within the sound discretion of the court. *State v. Campbell*, 127 N.H. 112, 115 (1985). To warrant a favorable exercise of that discretion, it is not enough merely to allege in general or conclusory terms that expert services would be helpful. *Id.* Rather, a defendant must demonstrate by reference to the facts and circumstances of his particular case that the assistance he seeks is necessary to ensure effective preparation of his defense by his attorneys. *Id.*

■ To successfully establish an unsustainable exercise of that discretion, on appeal, the defendant must demonstrate by clear and convincing evidence that his request to the court included as complete a showing of necessity for the desired services as could be expected of him, and that the denial of funds substantially prejudiced him at trial. *State v. Stow*, 136 N.H. 598, 605 (1993); *see also State v. Lambert*, 147 N.H. 295, 296 (2001); *Campbell*, 127 N.H. at 117.

The defendant filed a motion for services other than counsel to explore the possibility that improper techniques were employed during interviews of the victim because: (1) the initial interviews between the victim and Ashburn and Hicks were not recorded; (2) "leading questions and anatomical drawings were used"; and (3) "the child was not asked about her memories of prior instances of abuse." The defendant cited our approval of expert testimony in this area, *see State v. Sargent*, 144 N.H. 103, 105 (1999). He also stated that, "if after consulting with Dr. Esplin,

counsel feels that it is necessary to call Dr. Esplin at a trial in this matter, counsel will then petition this court for additional funds."

In denying the initial motion for funds the trial court ruled:

> According to the defendant, the value of Dr. Esplin's services is to explore the reliability of [the victim's] statements and whether, because of improper interviewing techniques, false memory implantation may have occurred .... After reviewing the videotape and other relevant evidence, the Court finds that the defendant has not shown that improper interviewing techniques were used, and thus, the probable value of Dr. Esplin's testimony is minimal.

The defendant argues that the trial court's finding constituted an unsustainable exercise of discretion because he pointed to specific examples of improper interview techniques. In *State v. Sargent*, 144 N.H. at 106, we held that "the proper protocols and techniques used to interview child victim witnesses" is a subject for expert testimony. We did not require, however, "that the trial court provide funds for such a witness, nor did [we] mandate that such expert witnesses be called in all cases involving child victims." *Cupe v. State*, 560 S.E.2d 700, 706 (Ga. Ct. App. 2002).

In this case, the defendant has not met his burden of demonstrating by clear and convincing evidence that his request for authorization to obtain expert services at public expense included as complete a showing of necessity as could then be expected of him. *See Campbell*, 127 N.H. at 117. At the time of his request, he merely pointed out to the trial court, through his motions and during his motion hearings, that a few improper techniques may have been employed during the interview without demonstrating how those improper techniques would affect his case.

Specifically, the defendant pointed to several exchanges that took place during the recorded interview. One such exchange is the following:

> Victim: Well he showed me ways on how to make a baby and on how to . . .
>
> Anne: Would it be easier if you pointed to the picture?
>
> Victim: Yes.
>
> Anne: Okay.
>
> Victim: Is there a girl in there? He tried um . . . (circles vagina and draws a line between female and male figures)

Officer Hicks: What did he try to do with his penis in your vagina?

Victim: He tried to show me how men and women made a baby.

Anne: Yeah?

Victim: Uh huh.

Officer Hicks: But what did he do with his penis in your vagina?

Victim: Well he didn't really go in but he tried to show me with it. They were really (unclear) and then he showed me how they could have it but not have a baby by not using that.

Although both questions asked by Officer Hicks were leading, because at no point had the victim stated, prior to the questions, that the defendant had put his penis in her vagina, we are not persuaded that such questions had any impact upon his case. In each instance, the victim did not respond with the answer suggested by Officer Hicks' questions; rather, she gave her own independent version of the events. The defendant pointed to only three other excerpts in his motions and during his motions hearings. After reviewing the videotape and transcript of the interview, we find those three excerpts to be equally unpersuasive.

The defendant also pointed out that the interviewers used anatomical drawings, but he failed to present to the court how that use may have affected his case. *See Campbell*, 127 N.H. 115. Additionally, the defendant pointed to a game of "hangman" that was played by the interviewers and the victim at the end of the interview. While under some circumstances the use of a game could be an inappropriate effort to cajole a child into giving favorable responses, in this case the child spontaneously brought up the notion of playing the game. At no point did the interviewers indicate that playing the game was contingent upon her answers to the questions, nor did they ever attempt to use the game to aid in the interview.

■ The same analysis holds for the defendant's reference to the fact that several prior interviews were unrecorded and his claim that the interviewers failed to ask the child about her prior sexual history. In all instances, the defendant, while citing examples of possible improper interview techniques, failed to point out how, under the facts and circumstances of his case, those techniques, if improper, affected the victim's answers so that an expert was necessary to ensure effective preparation of his case. *See id.* We find that at the time the defendant requested authorization to obtain the expert services, he failed to make as

complete a showing of necessity as could then have been expected of him; therefore, the trial court's decision not to grant the defendant the funds he sought for an expert was a sustainable exercise of discretion. *Id.* at 117; *Stow*, 136 N.H. at 605.

The defendant argues that without access to an expert, his counsel was unable to make a showing as to what effect, if any, these allegedly improper interview techniques may have had upon his case. While we cannot expect defense counsel to indicate what an expert will find before the expert has had a chance to find it, it is reasonable to require the defendant to articulate some basis beyond general hope that an expert might be helpful in trial preparation. *Campbell*, 127 N.H. at 118. Under the facts and circumstances of this case, including the specific examples cited to by the defendant, we see no evidence that the victim's answers were a result of any suggestibility that could be attributed to leading questions or other allegedly improper techniques. The defendant must point to some evidence, aside from mere hope for its existence, which would tend to indicate a causative effect of an improper interview technique, and, in this case, he failed to satisfy that burden.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Williams v. Martin*, 618 F.2d 1021, 1026 (4th Cir. 1980); *Stow*, 136 N.H. at 605; *Campbell*, 127 N.H. at 115. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant's second issue on appeal concerns evidence tending to demonstrate that the victim masturbated on prior occasions. In order to determine the admissibility of such evidence, the trial court held a *Howard* hearing. *See State v. Howard*, 121 N.H. 53 (1981). Although finding the evidence "probative of her prior sexual knowledge because she alleged at the time of the disclosure that the defendant made her masturbate in front of him and put her own finger in her vagina," the trial court denied the defendant the opportunity to make use of or inquire into the incident because it found that "sufficient trustworthy evidence" had not been presented to it at that time. The only evidence was a statement from the mother that a babysitter had told her that the victim had masturbated.

The defendant argues that he presented sufficient trustworthy evidence and that, even if he were not allowed to introduce such evidence, he should have been allowed to inquire about it on cross-examination because he had a "good-faith basis to believe the conduct occurred, and an ability to prove the factual predicate underlying the inquiry."

In *Howard*, we recognized that the "average juror would perceive the average twelve-year-old girl as a sexual innocent." *Howard*, 121 N.H. at

61. In order to counter that perception, we held that "a defendant must be afforded the opportunity to show, by specific incidents of sexual conduct, that the [victim] has the experience and ability to contrive a statutory rape charge against him." *Id.*

A trial court's determination about the introduction of evidence or the scope of cross-examination is a matter of discretion for the court and will not be overturned absent an unsustainable exercise of such discretion. *State v. Berrocales*, 140 N.H. 647, 649 (1996); *State v. Ellsworth*, 142 N.H. 710, 720 (1998). To establish an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Berrocales*, 140 N.H. at 649.

In both circumstances, to be admissible, the defendant must demonstrate that the specific details of the prior allegation are probative of the assertion that the victim had independent knowledge of the sexual activity with which the defendant is charged. *Berrocales*, 140 N.H. at 649; *Ellsworth*, 142 N.H. at 720-21. In this case, the trial court's determination to disallow the introduction of such evidence did not constitute an unsustainable exercise of discretion because the fact that the victim may have masturbated on prior occasions was not probative of independent knowledge of the sexual activity with which the defendant was charged.

*Affirmed.*

BRODERICK, C.J., and NADEAU and DUGGAN, JJ., concurred.