Belknap
No. 2003-578

THE STATE OF NEW HAMPSHIRE

v.

JOHN SWEENEY

Argued: October 13, 2004
Opinion Issued: January 24, 2005

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

GALWAY, J. The defendant, John Sweeney, appeals his convictions by a jury for one count of aggravated felonious sexual assault, *see* RSA 632-A:2, III (Supp. 2004), and one count of felonious sexual assault, *see* RSA 632-A:3, II (Supp. 2004). We reverse and remand.

On appeal, the defendant argues that the Superior Court (*Smith*, J.; *Perkins*, J.; *Smukler*, J.) erred by denying his motions: (1) to fire his trial attorney; (2) to introduce certain medical records; (3) for services other than counsel; (4) to strike four jurors; (5) for a bill of particulars; and (6) to dismiss. The defendant also contends that the trial court erroneously failed to engage in a colloquy with him regarding his waiver of his privilege against self-incrimination.

I

On the first day of trial, before the jury was sworn in, the court conducted a hearing regarding whether the tapes of certain recorded conversations were authentic. During the prosecution's direct examination of a witness, the defendant asked if he could speak to the trial judge "privately." The trial judge replied, "No, sir. It's not allowed." When the defendant again attempted to speak to the trial judge, the following exchange occurred:

> THE COURT: Mr. Sweeney, you are represented by very, very competent counsel. One of the things that lawyers worry about a great deal is somebody saying something that's going to harm their case. For that reason, we have a general rule that we do not allow individuals who are represented by counsel to speak unless they've been put on the stand by their lawyer.

> MR. SWEENEY: Yes, sir, I understand that. You told me that the other day. But this tape number two—

> THE COURT: Mr. Carroll will make any arguments for you that have to be made.

> MR. SWEENEY: He's refused to make that argument, your Honor.

THE COURT: Well, then, as long as you're represented by him, Mr. Sweeney, then you have to pay attention to him.

MR. SWEENEY: *Well, sir, do I have the right to fire my lawyer?*

THE COURT: *At this point in time, no.* We're on the verge of starting the jury trial, sir. You've been represented by Mr. Carroll—

MR. SWEENEY: For ten months, sir.

THE COURT: Yes. Okay.

MR. SWEENEY: And I wasn't aware of this false statement until 22 March, sir. And this tape was overprinted and on Saturday last week, the overprint was missing from the tape when I heard it again. I've only heard the tape twice. And now it's missing.

THE COURT: You're speaking again, sir. You should let Mr. Carroll do your talking.

MR. SWEENEY: Your Honor, I'm entitled to a fair trial.

THE COURT: That's right.

MR. SWEENEY: And I don't believe, like I stated in my arraignment, I'm getting a fair trial because of this gentleman over here.

THE COURT: Well, I can disagree with you because number one—

MR. SWEENEY: That's fine, your Honor, thank you.

THE COURT: Thank you. Proceed.

(Emphasis added.)

The defendant argues that in this exchange, he "clearly and unequivocally expressed his desire to fire his attorney and to represent himself." He asserts that the trial court violated his State and federal constitutional rights and committed reversible error by summarily denying his request. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, VI, XIV. We first address the defendant's claim under the State

Constitution, relying upon federal decisions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ Both Part I, Article 15 of the State Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to self-representation and the right to counsel. *State v. Ayer*, 150 N.H. 14, 25 (2003), *cert. denied*, 124 S. Ct. 1668 (2004); *see also Faretta v. California*, 422 U.S. 806, 819 (1975). The two rights are mutually exclusive; the exercise of one right nullifies the other. *Ayer*, 150 N.H. at 25. To be effective, an assertion of the right to self-representation must be: (1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely. *See State v. Thomas*, 150 N.H. 327, 328 (2003); *see also Ayer*, 150 N.H. at 26.

The requirement that asserting the right to self-representation be clear and unequivocal "is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation." *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir.), *cert. denied*, 531 U.S. 994 (2000) (quotations omitted). It "also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." *Id.* at 559.

To invoke the right to self-representation, a defendant need not "recite some talismanic formula." *Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000); *see also United States v. Betancourt-Arretuche*, 933 F.2d 89, 92-93 (1st Cir.), *cert. denied*, 502 U.S. 959 (1991). "Indeed, such a requirement would contradict the right it was designed to protect as a defendant's [constitutional] right of self-representation would then be conditioned upon his/her knowledge of the precise language needed to assert it." *Buhl*, 233 F.3d at 792. However, "it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must *result in* a clear and unequivocal statement." *United States v. Proctor*, 166 F.3d 396, 403 (1st Cir. 1999).

The State argues that the defendant's request was neither clear nor unequivocal. While we agree with the State that the defendant's question did not, by itself, constitute a demand to proceed *pro se*, *see Commonwealth v. Myers*, 748 N.E.2d 471, 475 (Mass. App. Ct. 2001), we hold that it was sufficient to trigger the court's duty to inquire further, *see Proctor*, 166 F.3d at 405-06.

The trial court had the duty to eliminate the ambiguity the question presented. *See id.* "Once the defendant makes a sufficiently clear request to indicate an intention to switch representational gears, further judicial inquiry is necessary to clarify the nature of those changed intentions." *Id.* at 405 n.11. We do not hold that a trial judge must explicitly inform a defendant of his right to proceed *pro se.* Indeed, such a requirement could lead "to a defendant's making a choice which is ordinarily not in his best interest." *Myers,* 748 N.E.2d at 476. Nor do we hold that a court must, in all cases, conduct a formal colloquy. *See Thomas,* 150 N.H. at 329-30. Nevertheless, it was the court's obligation in this case to explore what the defendant meant by asking if he had the right to fire his counsel. The court could have easily done so by asking the defendant *why* he wanted to fire his counsel and how he wished to proceed if permitted to do so.

■ Presumably, the defendant asked the question because he wanted either to represent himself or to replace his attorney. Both of these are constitutionally protected choices. *See Ayer,* 150 N.H. at 25; *see also United States v. Myers,* 294 F.3d 203, 206-07 (1st Cir. 2002).

■ The State contends that the defendant's request, either to proceed *pro se* or to fire his attorney, was untimely. To the contrary, a request to proceed *pro se* is timely if made before the jury is empanelled. *Betancourt-Arretuche,* 933 F.2d at 96. Moreover, although a request for a new attorney made on the first day of trial is untimely, timeliness is but one factor for evaluating a trial court's denial of a motion for substitute counsel. *United States v. Woodard,* 291 F.3d 95, 107 (1st Cir. 2002). Other factors include "the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.* (quotation omitted).

The State further asserts that the defendant's objections to his current counsel were unfounded. Because of the court's lack of inquiry, we are unable to assess this contention. *See United States v. Prochilo,* 187 F.3d 221, 228 (1st Cir. 1999). We have no information as to the nature and extent of any conflict between the defendant and his attorney. *See id.* While we may infer from the record that the defendant was dissatisfied with his counsel because he did not make a particular argument, absent any court inquiry, we cannot confirm that this inference is correct. *See id.* at 227-28. If the record established that this was the source of the defendant's dissatisfaction, we might agree with the State that denying a request for new counsel would have been a sustainable exercise of discretion. *See*

*Woodard*, 291 F.3d at 108-09 (substitution of attorney not warranted because of attorney's failure to file motion he considered to be meritless; "[a]n attorney is not obligated to pursue weak options when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial") (quotation omitted)).

Nor can we presume that the court addressed his objections, or the defendant withdrew them, merely because he voiced no further complaints. Having been told that he had no right to fire his attorney, he could have assumed that he had no choice but to continue with appointed counsel. *See Proctor*, 166 F.3d at 404.

The record simply does not provide a basis for sustaining the trial court's decision. *See Prochilo*, 187 F.3d at 229. To the extent that the defendant wished to represent himself, we have no way of determining whether his decision to do so was a knowing, intelligent and voluntary waiver of his right to counsel. *See Ayer*, 150 N.H. at 26; *see also Proctor*, 166 F.3d at 401 (trial court can commit reversible constitutional error by denying proper assertion of right to represent oneself). Similarly, to the extent that he wanted substitute counsel appointed, we cannot ascertain whether there was good cause to grant this request, such as a conflict of interest, a breakdown in communication or an irreconcilable dispute with his attorney. *United States v. Richardson*, 894 F.2d 492, 496 (1st Cir. 1990). "The difficulty is that we have no way of knowing which of these two scenarios—or perhaps some third scenario—is the true story. And the reason the true story is not known is that the [trial] court did not inquire and make findings." *Prochilo*, 187 F.3d at 226.

■ On this record, we are constrained to conclude that the trial court's summary response to the defendant's question, without further inquiry, violated his State constitutional rights and constituted reversible error. *See Proctor*, 166 F.3d at 406-07. Such an error is not subject to harmless error review and requires a new trial. *See id.* at 406 n.13; *see also Ayer*, 150 N.H. at 29-30. Accordingly, we direct that the defendant's convictions be set aside and this case be remanded for further proceedings. *See Prochilo*, 187 F.3d at 229. Because the defendant has prevailed on his claim under the State Constitution, we need not address his claim under the Federal Constitution. *Ball*, 124 N.H. at 237.

## II

The defendant asserts that the evidence was insufficient to support his convictions. Although we reverse his conviction upon his first claim of

error, we must decide this issue because, if the evidence were insufficient, the Double Jeopardy Clauses of the State and Federal Constitutions would preclude a remand for a new trial. *State v. Shannon*, 125 N.H. 653, 667 (1984).

In an appeal challenging the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Mason*, 150 N.H. 53, 56 (2003). We examine each evidentiary item in the context of all of the evidence, not in isolation. *Id.* Where the victim's testimony is sufficient to establish a *prima facie* case, no corroborating evidence is needed. *Id.*

The defendant argues that the evidence was insufficient in part because the State failed to prove that the offenses occurred at the time and place alleged in the indictments. Generally, the State need not prove that an assault occurred at the time alleged in the indictment or at a particular location. *See State v. Dupont*, 149 N.H. 70, 77 (2003); *see also State v. Seymour*, 142 N.H. 620, 622 (1998).

There are two exceptions to this general rule; the defendant does not argue that either exception applies. *Seymour*, 142 N.H. at 622. The first exception occurs when the State provides a bill of particulars, which the State did not do in this case. *State v. French*, 146 N.H. 97, 101 (2001). The second exception occurs when the State alleges that the crime occurred within a timeframe and the defendant asserts lack of opportunity as a defense for the entire period. *Seymour*, 142 N.H. at 623. The defendant did not assert lack of opportunity. Accordingly, the State had no burden to prove beyond a reasonable doubt that the alleged assaults took place on particular dates or at specific locations.

The defendant next asserts that the evidence was insufficient to establish that he "penetrated" the victim. We disagree.

Fellatio is "sexual penetration" for the purposes of aggravated felonious and felonious sexual assault whether or not it involves actual penetration in the sense of "passing through or into." *State v. Melcher*, 140 N.H. 823, 826 (1996) (quotations omitted). Fellatio occurs when the victim orally stimulates the defendant's penis. *Id.* Oral stimulation entails using one's lips or tongue. *See Mason*, 150 N.H. at 57.

We believe that a jury could reasonably have concluded from the victim's testimony that she orally stimulated the defendant's penis. The victim testified that whenever she stayed overnight at the defendant's motor home, she gave him "a blow job." She explained that she meant this

term to indicate that the defendant made her put her "mouth around his penis." We conclude that from this testimony a rational trier of fact, viewing the evidence and reasonable inferences from it in the light most favorable to the State, could have found beyond a reasonable doubt that the defendant "penetrated" the victim.

## III

We address the defendant's other claims in the interest of judicial economy to the extent that they are likely to arise upon retrial. *State v. Tierney*, 150 N.H. 339, 345 (2003).

## A

The defendant contends that the trial court erroneously denied his pre-trial motion for services other than counsel. *See* RSA 604-A:6 (2001). In this motion, he requested public funds to hire a physician to examine him and file a report about whether the defendant was capable of attaining an erection or ejaculating, and whether the current state of his sexual capacity "has been present for [a] period of time." The defendant argues that denying this motion violated his rights to present all proofs favorable, to present a defense, and to a fair trial as guaranteed by Part I, Article 15 of the New Hampshire Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. We first address his argument under the State Constitution, citing federal opinions for guidance only. *Ball*, 124 N.H. at 231-33.

██ "Regardless of whether a defendant has invoked equal protection, fundamental fairness necessary for due process, or the right to services to enable his counsel to assist him effectively, an indigent defendant's access to experts has been said to lie within the sound discretion of the court." *State v. Wellington*, 150 N.H. 782, 784 (2004). To warrant a favorable exercise of that discretion, the defendant must demonstrate to the trial court that the assistance he seeks is necessary to ensure effective preparation of his defense by his attorneys. *Id.* "As a general rule, necessity may be found if the expert would advise or testify on a matter directly in issue and the showing of necessity will obviously be strongest if the testimony of an expert is essential to establish a matter in issue or could be conclusive on that issue." *State v. Campbell*, 127 N.H. 112, 115-16 (1985) (citations omitted); *see also United States v. Manning*, 79 F.3d 212, 218 (1st Cir.), *cert. denied*, 519 U.S. 853 (1996) (expert services necessary

"when ... proffered expert testimony was pivotal to the indigent defendant's defense").

We review the trial court's decision under our unsustainable exercise of discretion standard. *See Wellington,* 150 N.H. at 784. To establish that the trial court's discretion was unsustainable, the defendant "must demonstrate by clear and convincing evidence that his request to the court included as complete a showing of necessity for the desired services as could be expected of him, and that the denial of funds substantially prejudiced him at trial." *Id.*

■ We hold that the defendant has not met this burden. The defendant argues that the proposed physical examination and report were necessary to show that he was physically incapable of committing the alleged assaults. To the contrary, erection and ejaculation are not elements of or defenses to the crimes of aggravated felonious and felonious sexual assault. *See* RSA 632-A:2, III, :3, II. Both crimes require only that the defendant "engage in sexual penetration." RSA 632-A:2, III, :3, II. The act of "sexual penetration" includes "fellatio." RSA 632-A:1, V(c) (Supp. 2004). As previously discussed, fellatio involves the oral stimulation of a penis; it does not require that the penis be erect. *See Melcher,* 140 N.H. at 826. Moreover, "[e]mission is not required as an element of any form of sexual penetration." RSA 632-A:1, V(h) (Supp. 2004).

That the physician's examination and report would be relevant to impeach the victim's credibility is insufficient to establish that they were "necessary." Witness credibility is a collateral, not a direct matter. *See State v. Donnelly,* 145 N.H. 562, 566 (2000); *see also Campbell,* 127 N.H. at 115-16.

The North Dakota Supreme Court reached a similar conclusion in *State v. Gonderman,* 531 N.W.2d 11, 13-14 (N.D. 1995). In that case, the defendant was charged with engaging in sexual acts and having sexual contact with two minor children. *Gonderman,* 531 N.W.2d at 12. He requested public funds for a "nocturnal penile study," which he asserted would show that he was impotent and had been incapable of having an erection for at least six years. *Id.* Like the defendant in this case, he argued that the study was necessary to show that he was physically incapable of committing the alleged acts. *Id.* at 13. In rejecting this assertion, the court ruled that because whether the defendant was impotent or could maintain an erection was neither an element of nor a defense to the charged offenses, denying his request for a "nocturnal penile study" did not deny him a fair trial. *Id.* at 13-14.

As the defendant has failed to demonstrate by "clear and convincing evidence" that his request to the court included as complete a showing of necessity for the desired services as could be expected of him, we uphold the trial court's denial of his motion for services other than counsel. As the State Constitution is at least as protective of the defendant's rights as the Federal Constitution under these circumstances, we reach the same result under the Federal Constitution. *See Manning,* 79 F.3d at 218; *see also Campbell,* 127 N.H. at 115-16.

## B

The defendant next argues that the trial court erroneously denied his motion to admit a medical record that contained his statement that he had had "no sexual function for ten years." He contends that the statement was admissible under New Hampshire Rule of Evidence 803(4).

We will not reverse a trial court's ruling on the admissibility of evidence absent an unsustainable exercise of discretion. *State v. Gordon,* 148 N.H. 710, 719 (2002). To prevail, the defendant must show that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

Rule 803(4) excepts from the hearsay rule:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances indicating their trustworthiness.

N.H. R. EV. 803(4).

In determining whether evidence is admissible under Rule 803(4), the court must first find that the declarant intended to make the statements to obtain a medical diagnosis or treatment. *State v. Bader,* 148 N.H. 265, 275 (2002), *cert. denied,* 538 U.S. 1014 (2003). This finding may be based upon circumstantial evidence. *Id.* The court must next find that the statements at issue describe medical history, or symptoms, pain, sensations, or their cause or source to an extent reasonably pertinent to diagnosis or treatment. *Id.* at 276. Finally, the circumstances must indicate that the statements are trustworthy. *Id.*

As the proponent of the statement, the defendant had the burden of proving that it met the requisites of Rule 803(4). *See State v. Wade*, 136 N.H. 750, 755 (1993). We hold that the trial court reasonably determined that he failed to meet this burden.

 The defendant failed to make a sufficient showing that he intended to make the statement to obtain a diagnosis or treatment. He never explained to the court why he sought treatment in the first place. Nor did he explain how his statement that he had not had sexual function for ten years was reasonably pertinent to that treatment or diagnosis. Further, he did not set forth the circumstances surrounding the making of the statement, other than to state that it was made in August 2000, before he moved his motor home next to the victim's trailer in Alton. By contrast, the State informed the court that when he made this statement the defendant was under investigation for sexually abusing two other children. In addition, the medical record itself is silent with respect to the reason the defendant sought treatment or diagnosis.

Based upon this showing, the trial court reasonably could have concluded that the defendant failed to demonstrate that the statement fell within Rule 803(4). Accordingly, we conclude that the trial court's denial of the defendant's motion to admit the statement was sustainable.

The defendant asserts that denying his motion violated his rights to present all proofs favorable, to present a defense, and to a fair trial as guaranteed by Part I, Article 15 of the New Hampshire Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. He has not developed any argument, however, to support this assertion. His off-hand invocation of constitutional rights, supported by neither argument nor authority, warrants no extended consideration on appeal. *Ayer*, 150 N.H. at 34.

C

We briefly dispose of the defendant's argument that the trial court erroneously denied his request for a bill of particulars specifying the dates and locations of the assaults. The indictments alleged that the assaults took place in Alton during the years 2000 and 2001. One indictment alleged a single act of fellatio; the other alleged multiple acts of fellatio. The defendant contends that absent more specific dates and locations, the indictments violated his rights under Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution.

██ A constitutionally sufficient indictment informs the defendant of each element of the offense charged with sufficient specificity to enable the defendant to prepare his defense. *State v. Rodney Portigue,* 125 N.H. 352, 360 (1984); *see also Hamling v. United States,* 418 U.S. 87, 117-18 (1974). The decision whether to grant a motion for a bill of particulars is committed to the trial court's sound discretion. *State v. Dixon,* 144 N.H. 273, 275 (1999). We will not reverse the trial court's decision unless the defendant shows that it was clearly untenable or unreasonable to the prejudice of his case. *Id.*

██ We agree with the trial court that these indictments were sufficiently specific to ensure notice to the defendant to allow him to prepare for trial. *See Dupont,* 149 N.H. at 77. Neither time nor location is an element of the sexual assault crimes at issue. *See id.* (felonious sexual assault); *see also State v. Williams,* 137 N.H. 343, 346 (1993) (aggravated felonious sexual assault). Moreover, the defendant has made no showing that more specific dates and locations were necessary for preparation of his defense. Accordingly, we hold that the trial court's denial of the defendant's motion for a bill of particulars was a sustainable exercise of discretion.

## D

Citing the Fifth Amendment of the Federal Constitution, the defendant argues that the trial court erroneously failed to engage in a colloquy with him regarding his decision to testify and thus waive his privilege against self-incrimination. He relies solely upon *State v. Hewitt,* 128 N.H. 557 (1986), in which we addressed a defendant's State constitutional right to a twelve-member jury, not his privilege against self-incrimination under the Federal Constitution. *Hewitt,* 128 N.H. at 558. As the defendant has failed to furnish support for his argument, and we are aware of none, we reject it. *See Ayer,* 150 N.H. at 34; *see also State v. Buonadonna,* 583 A.2d 747, 754-55 (N.J. 1991) (where defendant is represented by counsel, trial court has no duty to advise him of right not to testify or to explain consequences of testimony; doing so might inappropriately involve the trial court in attorney-client relationship and raise Sixth Amendment and Fifth Amendment concerns).

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.