Rockingham
No. 2010-017

### THE STATE OF NEW HAMPSHIRE

v.

### ADAM MENTUS

Argued: September 15, 2011
Opinion Issued: December 14, 2011

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Adam Mentus, appeals his conviction of manslaughter, *see* RSA 630:2 (2007), following a jury trial in Superior Court (*Lewis*, J.). We affirm.

The jury could have found the following facts. On June 26, 2008, the defendant drove with his friend, Nathan Caron, to State Line Ammo in Plaistow, where Caron bought a Lorcin L380 handgun. The two then returned to Caron's house, where Anthony Palla joined them.

Eventually, the defendant left Caron's house and took the Lorcin to his house to show his brother. In the meantime, Deirdre Budzyna and Christina Sorrentino went to Caron's house. Upon their arrival, Caron left to go shopping, and, approximately ten minutes later, the defendant returned to Caron's house. Budzyna, Sorrentino, Palla and the defendant decided to go to a sandpit in Hampstead to fire the Lorcin. Budzyna agreed to drive. Before they left, the defendant put a full clip of ammunition in the Lorcin and took additional ammunition from Caron's room. The defendant put the Lorcin into his left pocket. Budzyna got into the driver's seat and the defendant sat behind her.

Moments later, the defendant reached into his pocket and retrieved the Lorcin. As he held the gun in his right hand, it fired. The bullet traveled through the back of the driver's seat and punctured Budzyna's left lung. Budzyna said "Adam," slammed the car into park and got out. The defendant helped her into Caron's house, where she collapsed on the floor. The defendant called 911. An ambulance arrived later and took her to the hospital, where she died.

After the shooting, the police questioned the defendant. He told them that after he sat down in the car, he wanted to put the gun under his seat, so he took the gun out of his left pocket, transferred it to his right hand, and, when he was bending down to place it on the floor, it fired. He also said that "[his] finger hit the trigger," that his finger was on the trigger or in the trigger guard area, and that he did not know whether there was a round in the chamber when the gun fired. At trial, he said that his finger was not in the trigger guard area and that he did not put his finger on the trigger. However, he also testified, "I might have hit the trigger. I might have hit the slide, but . . . I did not pull that trigger."

On appeal, the defendant argues that the trial court erred: (1) by providing him with only $1,200 of the $3,000 he requested to hire a firearms expert, *see* RSA 604-A:6 (Supp. 2005); and (2) by overruling his objection to the State's closing argument.

Prior to trial, pursuant to RSA 604-A:6, the defendant requested $3,000 from the court to hire Gregory Danas, a firearms expert, to examine the Lorcin. The defendant argued that he needed an expert to support his theory that the gun had fired without him pulling the trigger — that is, that it had misfired. The court initially allocated $750 and, after reconsideration, increased its allocation to $1,200. This amount was not sufficient to hire Danas. As a result, the defendant hired Thomas McDermott, a lawyer involved in litigation against gun manufacturers. The court ultimately ruled that McDermott was not qualified to testify as an expert and thus no expert testified on the defendant's behalf. On appeal, the defendant argues that the court erred in denying his request for $3,000.

■ To obtain funds for an expert, a defendant must demonstrate to the trial court that the expert is necessary to ensure effective preparation of his defense. *See State v. Sweeney*, 151 N.H. 666, 674 (2005). Necessity may be established where the expert will advise or testify on a matter directly in issue, or where the expert's testimony·is essential to a matter in issue or could be conclusive on that issue. *Id.* "Regardless of whether a defendant has invoked equal protection, fundamental fairness necessary for due process, or the right to services to enable his counsel to assist him effectively, an indigent defendant's access to experts has been said to lie within the sound discretion of the court." *State v. Wellington*, 150 N.H. 782, 784 (2004). Therefore, we review the trial court's decision under our unsustainable exercise of discretion standard. *Sweeney*, 151 N.H. at 675.

■ At the RSA 604-A:6 hearing, the judge said, "[T]hese are hard economic times. I'm not going to just easily approve $3,000 for a firearms expert." Based upon this statement, the defendant argues the judge denied his "request solely because of concerns about the source of funding." The

defendant argues that this amounts to reversible error, for we have said that "the fact that RSA 604-A:6 funds are in limited supply is not an appropriate reason for denying access and reliance upon it, without more, would constitute an [unsustainable exercise of discretion]." *State v. Stow*, 136 N.H. 598, 605 (1993); *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■ The judge here, though, did rely on more — specifically, he considered whether $3,000 was actually necessary to cover the cost of a firearms expert. At the hearing, he asked the defendant why the amount was necessary, saying "$3,000 to look at a gun? I need some explanation." He also said that he would supplement the $750 he initially approved if the defendant could get the "firearms expert to give . . . some detailed information as to what he can really do for [$3,000]." Thus, the judge was open to approving more funds if the defendant demonstrated that additional funds were needed; indeed, the judge ultimately approved $1,200. Therefore, the judge did not rely solely on the limited supply of State funds in reaching his decision.

■ ■ Accordingly, to succeed on appeal the defendant "must demonstrate by clear and convincing evidence that his request to the court included as complete a showing of necessity for the desired services as could be expected of him, and that the denial of funds substantially prejudiced him at trial." *Wellington*, 150 N.H. at 784. For three reasons we hold that the defendant has not shown that he was substantially prejudiced.

First, even without Danas, the defendant's misfire theory was substantially explored at trial. *Cf. People v. Seavey*, 762 N.Y.S.2d 435, 437 (App. Div. 2003) (holding that trial court's denial of funds for psychiatric expert did not prejudice defendant given that defendant's treating psychiatrist testified at trial). The State's expert witness thoroughly examined the gun, and found the safety and trigger pull in good working condition. In his research, he did find a safety warning that said the Lorcin L380 "may create an extremely dangerous condition and a potential for serious injury by firing when dropped." To test the gun for this condition, he struck it with a two-pound rubber mallet from several directions, the same method used in the study which initially discovered the potential defect. However, this experiment did not cause the gun to misfire. All of this information was provided to the jury and, therefore, even though the State's witness concluded that this particular gun was not susceptible to misfiring, the jury was informed that this model of gun was capable of misfiring.

Second, the defendant's own versions of the shooting were not consistent with how this particular gun could have misfired. *Cf. Hall v. State*, 566 S.E.2d 374, 378 (Ga. Ct. App. 2002) ("[The defendant] was not prejudiced by

the court's denial of his motion to [obtain funds for] an expert in interviewing children, where he admitted the underlying facts as represented by the children."). He never said that he dropped the gun, except after it fired. At all times he maintained that the gun was in his hand when it fired. He answered in the negative when asked if there were hard objects around him that could have bumped into the gun. He did say that he might have told someone the gun banged into something, but only "because he was trying to put different scenarios [together] because [he] still didn't know what happened." Given that the gun did not misfire even after being hammered with a mallet, the defendant's description of the event did not provide a plausible basis for his theory.

Third, even if the defendant had been able to prove that the gun had misfired, it does not necessarily follow that he would have prevailed on his defense. *See Green v. State*, 881 P.2d 751, 752 (Okla. Crim. App. 1994). Manslaughter is defined as recklessly causing the death of another. RSA 630:2, I(b) (2007). A person is reckless if "he is aware of and consciously disregards a substantial and unjustifiable risk," and the risk is "of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation." RSA 626:2, II(c) (2007). The defendant's reckless act must also have been the proximate cause of the death, which is "the cause without which the event would not have occurred, and the predominating cause, a substantial factor from which the event follows as a natural, direct and immediate consequence." *State v. Lamprey*, 149 N.H. 364, 367 (2003) (quotation omitted).

At trial, the defendant argued that he could not be found guilty of reckless manslaughter because the gun had misfired. Our case law does not ineluctably lead to this result. As we said in *Lamprey*, "if one were to pick up a loaded handgun, ensure that the safety is engaged, aim at a bystander and pull the trigger, it does not follow that a mechanical failure of the safety should exculpate the defendant if he kills the bystander." *Id.* at 369. This observation is based on the general rule that "[o]ften the risk of a particular kind of contributing coincidental intervening cause is the very risk that made the conduct reckless in the first place." *Id.* Therefore, unsafely handling a gun is reckless because it creates a risk that if it misfires, the bullet will kill someone.

Here, there was ample evidence that the defendant unsafely handled the gun. Based on his admitted knowledge of hunter safety rules, he testified that a gun should always be pointed in a safe direction, that it should be unloaded when transported in a car, and that at all times it should be treated as if it were loaded. Yet, he admitted that he did not follow these

rules. He did not unload the gun prior to entering the car, did not determine if there was a round in the chamber, and did not even check to see if the safety was on, and, while handling the gun, he had it pointed at the back of the seat in which Budzyna was sitting. Based on the defendant's mishandling of the gun, a reasonable jury could have found the defendant guilty of reckless manslaughter even if he had proved that the gun had misfired. Accordingly, the trial court's refusal to provide the defendant the full amount of requested funds did not substantially prejudice him.

■ As for the second issue, the defendant argues that the trial court erred in overruling his objection to the State's closing argument. "A prosecutor . . . has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge the jury to draw inferences of guilt from the evidence." *State v. Sylvia*, 136 N.H. 428, 431 (1992) (quotation omitted). Moreover, "[a]s the trial court is in the best position to gauge any prejudicial effect the prosecutor's closing remarks may have had on the jury, we review its decision . . . under an unsustainable exercise of discretion standard." *State v. Sanchez*, 152 N.H. 625, 628 (2005). "To show that the trial court's decision is not sustainable, the defendant must demonstrate that it was clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

Here, the court overruled the defendant's objection to the following part of the State's closing argument:

> There's always a risk. The way we handle guns that are even unloaded. Once its loaded, there's a risk, and you can't let it bump into something. And while it may [misfire] when you drop it on the ground, what does that mean? . . . That means you shouldn't drop it on the ground. If you've got that gun and it's loaded, [it] better be in your holster with a triple safety. And when you pull it out, you better not drop it on the ground or you're responsible for that.

The defendant interprets this statement to mean that a person is reckless *per se* if he drops a gun and it misfires. He argues that this is a misstatement of law and, therefore, the judge should have sustained his objection.

■ We do not agree. The prosecutor here was simply imploring the jury to find the defendant guilty of reckless manslaughter because he had mishandled the gun, an argument that the defendant was free to counter. Therefore, this statement was permissible, for a prosecutor may "urge the jury to draw inferences of guilt from the evidence." *Sylvia*, 136 N.H. at 431

(quotation omitted). We accordingly hold that the trial judge's overruling of the defendant's objection was not an unsustainable exercise of discretion.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.