Sullivan
No. 2002-599

THE STATE OF NEW HAMPSHIRE

v.

DEBORAH CHAPMAN

Argued: July 10, 2003
Opinion Issued: August 19, 2003

*Peter W. Heed*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Deborah Chapman, was convicted by a jury of two counts of theft by unauthorized taking, *see* RSA 637:3 (1996). On appeal, she argues that the Superior Court (*Morrill*, J.) erred by: 1) excusing a juror without cause over the defendant's objection; 2) failing to completely and adequately answer a jury question during deliberations; and 3) failing to grant either the defendant's motion to dismiss or motion for directed verdict. We affirm.

The jury could have found the following facts. The defendant was an employee of Hubert's department store in Claremont. Hubert's cash registers were computerized and required the employee to enter his or her initials in a register when using it for processing sales, returns and voids. A return occurs when a customer returns merchandise that has previously been purchased. A void occurs when a sale is negated from the register before the merchandise leaves the store. While any employee is allowed to

process a return on the cash register, only key holders, assistant managers and managers could enter voids, which require a password.

In April 2000, the defendant was an assistant manager at Hubert's and had trained a part-time clerk named Amy Paquette. In October 2000, Paquette observed the defendant entering other employees' initials into a cash register. The defendant instructed Paquette not to tell anyone or else she would tell the owners that Paquette was responsible. Subsequently, the defendant started coming to the store on her days off and having Paquette process returns for items the defendant did not purchase. The defendant again threatened to accuse Paquette if she refused to process the returns. Paquette testified that the defendant fraudulently returned "[e]xpensive items, boots and jackets," each worth over $100.

In February 2001, the store's president, Guenter Hubert, noticed discrepancies in the Claremont store's sales records and asked the district manager, Dawn Safford, to investigate the matter. Safford and Hubert discovered that, between January 2000 and February 2001, there were forty-two fraudulent returns, totaling over $5,000, at the Claremont store. They also learned that the defendant was working when thirty-two of those transactions took place, and that the other ten transactions occurred when Paquette was working.

Hubert also discovered 130 fraudulent voids, totaling more than $500, entered at the Claremont store between December 1999 and December 2000. These voids all took place when the defendant was working. Further, on many occasions, the defendant was the only employee on duty authorized to enter voids. In addition, many of the fraudulent voids were entered a few seconds before or after a sale was entered on a cash register under the defendant's initials.

Prior to trial, the judge disqualified a juror because she informed the court that her boyfriend, with whom she lived, was the defendant's cousin. In response to questioning by the court whether her boyfriend would be upset if she voted to convict the defendant, the juror stated:

> I'm not sure. Personally, I feel it's my duty — if he gets upset, I don't know how he'll find out until after it was over with by his family, if he talks to his family. I've been with him for three years and I've never met her.

The court disqualified the juror, finding that "her objectivity can clearly be called into question."

Finally, during deliberations, the jury sent a question to the court asking:

> [C]an we consider all the evidence regarding both charges? We have a verdict on one, but are stuck on the other. If you could talk to us about that it would be very helpful. We are asking for legal clarification.

The court responded as follows: "You must consider each charge separately; however you may use all the evidence introduced that is relevant to a specific charge. Please continue to deliberate until you've reached verdicts on both indictments." Defense counsel requested that the court give a deadlock jury instruction on the grounds that use of the word "stuck" meant that the jury was deadlocked, but the court disagreed. Counsel then moved for a mistrial on the indictment upon which the jury was "stuck," if the court would not give a deadlock instruction. The court denied the motion.

Approximately two hours after receiving the court's instruction, the jury returned guilty verdicts on both counts of theft by unauthorized taking. This appeal followed.

■■ The defendant first argues that the trial court erred by disqualifying the juror, thereby depriving her of a fair and impartial jury. "It is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury." *State v. Weir*, 138 N.H. 671, 673 (1994) (quotation omitted). RSA 500-A:12, II (1996) provides that "[i]f it appears that any juror is not indifferent, he shall be set aside on that trial." "The trial court's determination of the impartiality of the jurors selected, essentially a question of demeanor and credibility, is entitled to special deference," so that the trial court's determination on this issue will only be reversed for an unsustainable exercise of discretion or a finding that the decision was against the weight of the evidence. *Weir*, 138 N.H. at 673-74 (ellipsis and quotations omitted); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■■ We conclude that the trial court's decision to excuse the juror was a sustainable exercise of its discretion. The juror's connection to the defendant, which the juror herself brought to the court's attention, and her uncertainty as to whether her boyfriend would be upset if she voted to convict the defendant, called into question her ability to be impartial. As a result, we find no error by the trial court in excusing the juror.

We next address whether the trial court committed reversible error in its treatment of the jury question received during deliberations. The defendant argues that the trial court's answer was tantamount to coercing the jury to reach a verdict.

■ A trial judge enjoys broad discretion in determining when and whether to instruct a jury on a deadlock charge. *State v. Alexander*, 143 N.H. 216, 224 (1998). "A trial court's aid to the jury deliberation process is not *per se* impermissible provided the court does not set the tone of the deliberations by directing the jury down a path towards a guilty verdict; any such direction to the jury, however subtle, denies the defendant an impartial jury." *Id.* (quotation, brackets, ellipsis and emphasis omitted). Further, the court's instruction cannot be of a coercive nature that would improperly sway a jury to reach a unanimous verdict. *Id.*

■ Analogizing this case to *State v. Jordan*, 130 N.H. 48 (1987), the defendant asserts that the court was required to give the jury a deadlock instruction. We disagree. The situation before us is not analogous to *Jordan*. Unlike *Jordan* and related cases, in this case the trial court reasonably found that the jury was not deadlocked, but instead was merely seeking an answer to a legal question. Contrary to the defendant's argument to the trial court, the jury's use of the word "stuck" did not establish that the jury was deadlocked on the second theft by unauthorized taking charge. Indeed, in light of the jury's indication that the trial judge's response would be "very helpful," it was reasonable for the trial court to conclude that the jury would be able to reach a verdict. Thus, we cannot say that the trial court erred by failing to give the jury a deadlock instruction.

■ ■ Moreover, we do not find that the court's instruction was of a coercive nature that would improperly sway a jury to reach a unanimous verdict. In evaluating whether a jury instruction is coercive, we examine four factors: 1) the content of the instruction; 2) the length of deliberations after the challenged charge; 3) the total length of deliberations; and 4) any indicia in the record of coercion or pressure upon the jury. *Alexander*, 143 N.H. at 225. First, when read in context, the content of the trial judge's instruction was not coercive. As explained above, the judge's instruction did not pressure the jury to reach a unanimous verdict nor did it persuade them to continue deliberating when they otherwise would not. The jury question established that the jury was seeking legal guidance from the court in order to continue deliberating, not that it had finished deliberating and had reached an impasse. The length of deliberations following the instruction as well as the overall time of deliberations further militates against a finding of coercion. Finally, the defendant does not point to, nor can we find, any indicia of coercion or pressure placed upon the jury to reach a unanimous verdict in this case. We hold, therefore, that the trial court did not commit reversible error.

The defendant next argues that the trial court erred by failing to grant her motion to dismiss or her motion for directed verdict. Because both analyses necessarily involve the consideration of the sufficiency of the evidence presented at trial, we address both arguments together. When reviewing the sufficiency of the evidence, we ask whether, based upon all the evidence and all reasonable inferences from it, considered in a light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty. *State v. Clyde,* 145 N.H. 388, 389 (2000).

The defendant was convicted of two counts of theft by unauthorized taking. "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." RSA 637:3, I.

The first indictment charges the unauthorized taking of money through fraudulent returns. At trial, Paquette testified that she had observed the defendant make unauthorized transactions on cash registers when she was not working. She also testified that the defendant made unauthorized returns at her register and threatened to accuse Paquette if she told anyone. Further, the record establishes that the fraudulent returns were made when either the defendant or Paquette was working. Viewing this evidence in a light most favorable to the State, we hold that a rational trier of fact could conclude beyond a reasonable doubt that the defendant was guilty of the unauthorized taking of money through fraudulent returns.

We now consider whether there was sufficient evidence to convict the defendant of making numerous fraudulent voids, as charged in the second indictment. It is undisputed that the evidence on this charge is entirely circumstantial. Circumstantial evidence, to be sufficient to convict, must exclude all rational conclusions other than the guilt of the defendant in a case where there is only circumstantial evidence to support the conviction. *State v. Newcomb,* 140 N.H. 72, 80 (1995).

The circumstantial evidence presented established that the defendant was working at the store when all of the fraudulent voids were entered. It was also shown that when many of the voids took place, the defendant was the only employee working who was authorized to enter voids, and that many fraudulent voids were entered just prior to or after a sale was entered under her initials.

The defendant argues, however, that witnesses testified that employees sometimes used each other's initials when using the registers, and that it was possible for unauthorized employees to learn passwords. Indeed, one former Hubert's employee testified that passwords were sometimes

exchanged by employees. The defendant thus asserts that the information relied upon to charge her with entering fraudulent voids, namely employee initials, passwords and time sheets, is not sufficient to convict her. Rather, she contends that this evidence also supports an inference that someone other than the defendant completed the fraudulent voids. We disagree.

While it is certainly possible that other employees could have entered fraudulent voids by using the defendant's initials and passwords, it does not necessarily follow that such possibilities amount to rational conclusions. For example, while Hubert's employees could use another person's initials, they were trained to use their own initials during transactions. Further, while it is possible that passwords could be manipulated, only management was given passwords and lower level employees were not trained to perform voids. Finally, given the temporal proximity between the fraudulent voids and returns, it was reasonable for the jury to conclude that the defendant, rather than another employee, was responsible for the voids. Aside from pure speculation that *anybody* could have committed this crime, there is nothing in the evidence to indicate that anyone other than the defendant was responsible. As the State suggests, the jury would have to believe that several Hubert's employees, including at least one who knew how to enter voids, had conspired to "frame" the defendant by entering her initials on sales for which they were responsible just prior to entering voids. As a result, we hold that the evidence excludes all rational conclusions other than the guilt of the defendant. We accordingly uphold the jury's verdict on this charge.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.