Grafton
No. 2003-594

THE STATE OF NEW HAMPSHIRE

v.

BRADLEY J. MACINNES

Argued: November 9, 2004
Opinion Issued: February 23, 2005

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and supplemental brief and orally), for the State.

*Decato Law Offices*, of West Lebanon (*R. Peter Decato* on the brief), and *DesMeules, Olmstead & Ostler*, of Norwich, Vermont (*Timothy A. Clark* and *Christopher A. Dall* on the supplemental brief, and *Mr. Clark* orally), for the defendant.

NADEAU, J. The defendant, Bradley J. MacInnes, appeals his conviction following a jury trial for felony criminal threatening with a firearm. *See* RSA 631:4, II (a)(2) (Supp. 2004). He argues that the Trial Court (*Vaughan,* J.) erred in ruling upon: (1) the admissibility of certain evidence; (2) his motions for directed verdict and for a mistrial; and (3) his request for a curative instruction. We affirm.

The record supports the following facts. On May 31, 2002, Jeremy Poljacik (victim) and Rocky Marsh went to Pine Tree Lane Apartments to visit friends. They stopped in the parking lot to talk to a friend of Marsh

and her sister. Around the same time, the defendant left one of the apartments with a group of people. He and his girlfriend approached her car, which was parked near the car where Marsh was talking. As the defendant walked past Poljacik, he scanned Poljacik from head to toe. After more looks, the defendant asked Poljacik if he had a problem with him. Poljacik said he did not, that he didn't know who the defendant was and that the defendant should leave him alone.

The defendant stepped back, and after taking off his shoes and putting down his cigarettes, attacked Poljacik. Poljacik caught him in a headlock and hit him in the head. Marsh also hit him. After a minute or two, Poljacik let the defendant go and told him to leave. The defendant pulled out a gun and, pointing it at Poljacik, asked if he wanted the defendant to shoot him. When the defendant pointed his gun in another direction, Poljacik and Marsh ran to an apartment. When they later emerged into the hallway, they saw the defendant coming at them with his right arm raised, holding a dark-colored object in his hand and threatening to kill them. The police arrived and the defendant was arrested.

The victim was deposed prior to trial. During his deposition, he stated that he had pled guilty to three unrelated charges. On the day of trial, the State advised defense counsel that the pleas had not yet been accepted by the court. Defense counsel then requested permission to impeach the victim with his deposition testimony about his alleged pleas. The trial court denied his request.

At the close of the State's case, the prosecutor referred to the hallway encounter arguing:

> If [the defendant] was in fear of serious bodily injury, would he continue to pursue a fight? Would he have run after them into the apartment building? Would he have tried to keep this fight going? Are those indicators of someone who is in fear or someone who is enraged and wants to fight?

Defense counsel objected at the conclusion of the State's argument, stating: "[The prosecutor] has suggested to the jury that if my client was not in fear of serious bodily harm when he went out the second time, that somehow that impacts on his defense—"

Both the State and the trial court disagreed with defense counsel's interpretation of the State's argument; the trial court then ruled the objection was untimely.

After the jury had been deliberating for about two hours, the court clerk checked on the status of deliberations. The clerk reported that the

foreperson had asked whether an alternate could be substituted for one of the jurors. At this point, defense counsel moved for a mistrial. The trial court sent the clerk back to request that the inquiry be put in writing. The written inquiry did not ask about substituting an alternate juror, but rather indicated that the jury had deadlocked 11-1 for conviction and that they did not believe that returning in the morning would change the outcome; they asked what they should do. The court advised them they could go home but should return in the morning for further deliberations. The jury returned the next morning and the trial court gave them a deadlocked jury instruction. An hour and a half later, the jury returned a guilty verdict.

On appeal, the defendant contends that the trial court erred by: (1) denying his request to impeach the victim about his pending pleas; (2) denying his request for a directed verdict; (3) refusing to give a curative instruction following an alleged misstatement of the law by the prosecutor in her closing argument; and (4) denying his request for a mistrial after the jury advised the trial court it was deadlocked.

## I. Admissibility of Victim's Pending Pleas

A trial court's determination about the introduction of evidence is a matter within its sound discretion. Absent an unsustainable exercise of that discretion, we will not overturn a trial court's ruling. *State v. Wellington*, 150 N.H. 782, 788 (2004). To meet this standard, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

In this case, defense counsel sought to elicit testimony from the victim that he had testified in his deposition that he had entered *Alford* pleas on three charges. *See North Carolina v. Alford*, 400 U.S. 25 (1970). Defense counsel identified two of these charges as felonies.

While the defendant cites the State Constitution in passing in his brief as a basis for admission of the victim's deposition testimony, he did not raise any constitutional claims before the trial court or in his notice of appeal. The only legal bases that he cited in his argument before the trial court were New Hampshire Rules of Evidence 607 and 609. We therefore confine our review to the applicability of those rules. *See State v. Blackmer*, 149 N.H. 47, 49 (2003).

Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Rule 609(a) provides in relevant part: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if

elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by . . . imprisonment in excess of one year under the law under which he . . . was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

■ The trial court ruled that the victim's deposition testimony was inadmissible because the requirements of Rule 609 had not been met. We agree. By its very language, Rule 609 is limited to impeachment of a witness with prior convictions. In this case, the victim's guilty pleas had not yet been accepted by the trial court; he had therefore not been convicted of the offenses which defense counsel sought to introduce and which were not otherwise admissible. *See, e.g.,* N.H. R. EV. 404(b). Accordingly, we sustain the decision of the trial court.

## II. Motion for Directed Verdict

The defendant next contends that the trial court erred in denying his motion for a directed verdict. He argues that the State presented insufficient evidence to negate his claim of self-defense. *See State v. Santamaria,* 145 N.H. 138, 141 (2000) (when evidence of self-defense admitted, conduct negating defense becomes element of charged offense which State must prove beyond a reasonable doubt).

The defendant concedes that he based his defense at trial on his use of deadly force to repel deadly force. The record contains evidence that the defendant provoked the victim verbally, that he attacked the victim, that he failed to retreat when he could safely do so and that he used an unreasonable degree of force. Based upon the record, we conclude that the jury could have reasonably resolved the conflicting evidence in favor of the State and that no reasonable juror could have found that the defendant acted in self-defense. *See id.*

On appeal, the defendant also argues that if his theory of self-defense was incorrect, the trial court should have interceded to correct the error. It is clear from the record that this issue was neither raised before the trial court nor listed in the defendant's notice of appeal and has therefore not been preserved for our review. *State v. Blackmer,* 149 N.H. 47, 48-49 (2003).

■ We have, however, recently adopted the plain error rule, which would allow us to consider an error that affects substantial rights even though not raised by either party. *See* SUP. CT. R. 16-A. The rule should be

used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Cf. United States v. Frady*, 456 U.S. 152, 163 n. 14 (1982) (discussing federal plain error rule). The United States Supreme Court has stated that the federal plain error rule contains four elements: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). We believe the same standards should inform our application of the State plain error rule.

In this case, the defendant argued in his opening statement that if the victim had used deadly force on him, the defendant was entitled to use deadly force to repel it. At the close of the State's case, he moved for a directed verdict, arguing that the State had failed to meet its burden. On appeal he argues that, although he did not raise the issue, the trial court should have considered, before ruling on his motion, whether the evidence might support a conclusion that his use of the gun constituted non-deadly force. He also contends that the trial court erred in failing to instruct the jury on this issue.

We are aware of no case in which we have addressed whether the act of pointing a gun at an individual without discharging it constitutes the use of deadly or non-deadly force under RSA 627:9 and the defendant cites none. *See* RSA 627:9 (1996). For that reason, even assuming there were an error, we cannot say that the trial court's failure to direct a verdict or to give an instruction *sua sponte* on the issue of non-deadly force was *plain* error.

### III. Closing Argument

After the State completed its closing argument, defense counsel objected, arguing that the prosecutor "suggested that if [the defendant were] not in fear of serious bodily harm when he went out the second time, that somehow that impacts on his defense—." The State argues that this issue has not been preserved because the objection was not made at the time the alleged improper statement was made and was thus untimely. After the State filed its brief, we issued an opinion holding that objections made immediately following an opponent's closing argument are made within a reasonable time and are thus preserved for appellate review. *State v. Hearns*, 151 N.H. 226, 232 (2004). We note, however, that the timing of the objection may affect the relief available.

■ Even if the prosecutor's remarks were somehow improper, the trial court's instructions addressed the principles of self defense and also advised that if counsel stated the law differently from the way the court stated it, the jury should ignore counsel's statements. The jury received a written copy of the court's instructions. During deliberations, the jury sent out a question; in response, the trial court instructed the jury that the defendant was not on trial for the subsequent event in the hallway. Because the trial court correctly instructed the jury on the law and juries are presumed to follow instructions, *State v. Barnes*, 150 N.H. 715, 718 (2004), we find no merit in the defendant's argument that the trial court's failure to give a curative instruction after the State's closing argument requires that his conviction be reversed. *See State v. Lamprey*, 149 N.H. 364, 366 (2003) (allegations of error in jury instructions are evaluated by interpreting instructions in their entirety as reasonable juror would have understood them and in light of all evidence in case).

*IV. Motion for Mistrial*

The defendant also argues that the trial court erred in denying his request for a mistrial. He contends that because the jury had informed the court that it wanted to replace the hold-out juror and that deliberating further would not be helpful, the court's decision to require the jury to return the next day and its delivery of a deadlocked jury instruction, *see State v. Jordan*, 130 N.H. 48 (1987), was of such a coercive nature that it improperly swayed the jury to reach a unanimous decision to convict. As a preliminary matter, we note that the record is unclear as to whether the entire jury knew of the foreperson's question to the clerk about whether a hold-out juror could be replaced. We note also that when the jury returned for a second day of deliberation, the trial court advised counsel that it intended to give the deadlocked jury instruction. Defense counsel responded, "Without waiving the objection we had yesterday to the mistrial, we have no objection to your instruction on deadlocked jury."

■■ A trial judge enjoys broad discretion in determining whether to give a deadlocked jury instruction. *State v. Chapman*, 149 N.H. 753, 757 (2003). In evaluating whether a jury instruction is coercive, we consider four factors: (1) the content of the instruction; (2) the length of deliberations after the challenged charge; (3) the total length of deliberations; and (4) any indicia in the record of coercion or pressure upon the jury. *Id.*

In this case, the total length of deliberations did not exceed three and a half hours. The trial court gave the deadlocked jury instruction that we endorsed in *State v. Jordan*, 130 N.H. at 50. The record is unclear whether the hold-out juror was aware of the foreperson's inquiry to the clerk about a substitute juror. The question posed to the clerk was not sent to the court in writing. The jury deliberated for an additional ninety minutes after receiving the *Jordan* instruction. Based upon the record before us, we cannot say that the trial court's denial of the defendant's motion for a mistrial was error.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.