Rockingham
No. 2005-855

EAST DERRY FIRE PRECINCT

v.

JOHN R. NADEAU & a.

JOHN R. NADEAU

v.

EAST DERRY FIRE PRECINCT

Argued: March 15, 2007
Opinion Issued: May 11, 2007

*Bernstein, Shur, Sawyer & Nelson,* of Manchester (*Andru H. Volinsky* and *Dawnangela Minton* on the brief, and *Mr. Volinsky* orally), for the plaintiff, East Derry Fire Precinct.

*Cook & Molan, P.A.,* of Concord (*Glenn R. Milner* on the brief and orally), for defendant John R. Nadeau.

DALIANIS, J. Defendant John R. Nadeau appeals an order of the Superior Court (*McHugh,* J.) rescinding his employment separation agreement with the plaintiff, East Derry Fire Precinct (EDFP), finding him liable for repayment of a wrongfully distributed severance payment, and ruling that he was not entitled to indemnification. We affirm.

The trial court found the following facts: Nadeau was the chief of the EDFP, an independent municipal district governed by three elected commissioners that provided fire protection services to East Derry. In the fall of 2004, Nadeau entered into negotiations with a potential Massachusetts employer. The parties agree that his employment with the EDFP ended on November 23, 2004. There are two contract provisions, providing significantly different compensation, that govern severance payments to Nadeau upon termination of his employment Under one provision, if Nadeau were terminated by the EDFP for reasons such as the dissolution of the precinct, he would receive nine months pay and any accumulated earned time. If he resigned in good standing, however, he would receive three weeks pay and all accrued leave benefits.

Nadeau applied for, and believed he had secured, the position in Massachusetts. He planned to resign as chief of EDFP and take this new position. He and one of the three fire commissioners, Alan Lundblad, agreed to create a separation agreement by which the commissioners would terminate Nadeau, thereby entitling him to the more substantial severance package. The separation agreement was prepared by attorneys with Nadeau's direct input and signed by him and two of the three commissioners during a meeting at which the third commissioner was absent. Shortly thereafter, approximately $90,000 was paid to Nadeau. That same month, the two commissioners who approved the separation agreement resigned. The remaining commissioner and two new appointees then brought a lawsuit against Nadeau and others. The trial court denied Nadeau's motion to dismiss him from the case, rescinded the separation agreement, and ruled that he was not entitled to the indemnification provision of his contract. Nadeau appeals these actions as well as challenges the sufficiency of the evidence.

## I. Failure to Dismiss the Defendant

Nadeau first argues that he should have been dismissed from the EDFP's lawsuit. We decline to address this argument. Nadeau states in his brief that the trial court denied his motion "for all of the reasons set forth in the [EDFP's] objection." Nadeau, however, has not provided an adequate record for us to review this ruling. Nowhere in the materials submitted on appeal is there a copy of Nadeau's motion, EDFP's objection, the trial court's decision, the transcript of any hearing on the motion, or any motion to reconsider or ruling thereon. Absent such materials, we lack a record sufficient to review this ruling. See Tiberghein v. B.R. Jones Roofing Co., 151 N.H. 391, 395 (2004); SUP. CT. R. 13(2).

*II. Rescission*

■ Nadeau next asserts that the trial court committed an unsustainable exercise of discretion by rescinding the separation agreement. "Rescission is an equitable remedy the grant of which is always a matter within the sound discretion of the trial court, depending upon the circumstances of each particular case." *Mooney v. Nationwide Mut. Ins. Co.*, 149 N.H. 355, 357 (2003) (quotation omitted). Equitable rescission, with restitution, is a remedy that restores the injured party to the position occupied before the transaction. *Id.* Consequently, the trial court should grant it only when, in all the circumstances, it appears right and just to the parties to do so. *Id.* "The determination whether the parties can be restored to the status quo is one that rests upon the relative equities of the parties as determined by the trial court." *Derouin v. Granite State Realty, Inc.*, 123 N.H. 145, 147-48 (1983). We review the trial court's order of rescission under our unsustainable exercise of discretion standard. *Mooney*, 149 N.H. at 357.

Nadeau argues that the elements necessary for rescission are not present in this case because "[t]here was no mistake (mutual or unilateral), misrepresentation, fraud or other circumstance leading up to the execution of the Separation Agreement which could allow the trial court to undo it."

■ To the contrary, considerable evidence of fraud and misrepresentation was found by the trial court, including: the formulation of a plan by Nadeau and Lundblad to engineer the higher severance pay; Lundblad's admissions to EDFP counsel; a ruse by Lundblad to conceal the real reason for the November 23, 2004 meeting from the third commissioner; and the failure of Nadeau and Lundblad to reveal Nadeau's imminent employment opportunity to the cooperating commissioner. To support these findings, the trial court cited the notes of EDFP's attorney stating that Lundblad had said, with regard to the EDFP, "the Chief and I are going to take it down," as well as her notes that the resignation would be effectuated "under the guise" of a performance evaluation at the November 23, 2004 meeting. In addition, the court cited the attorney's notes of conversations with Lundblad that used the words "blind sided" and "sweetheart deal" to describe the new separation agreement. The trial court found that Nadeau was "an active participant in the scheme" and that he "may well have been the aggressor in that he was the first one to contact EDFP's attorneys and propose the language of a Separation Agreement." We conclude that the record contains sufficient evidence to support rescission; the trial court did not commit an unsustainable exercise of discretion by ordering it.

■ Nadeau next argues that the rescission did not return him to the position he would have occupied had the separation agreement not been executed. He asserts that enforcement of the trial court's order deprives him of the severance he would have received anyway, as the EDFP did ultimately dissolve and this would have triggered the higher severance pay had he stayed on the job. Nadeau misapprehends the law of rescission. Equitable rescission and restitution is a remedy that is focused upon restoring *the injured party* to the position occupied *before the transaction*; equity returns the parties to their pre-injury status. *Id.* In this case, EDFP is the injured party, not Nadeau. The pre-transaction time frame is what the court scrutinizes, not hypothetical actions that Nadeau might have taken had he been unsuccessful in creating the fraudulent agreement. The status quo was equitably achieved by ordering restitution of the severance payment to the EDFP. "When a contract is rescinded, it is as if the contract never existed in the first place. This is precisely what the trial court's remedy accomplished." *Id.* at 358 (citation omitted).

Nadeau also vaguely asserts that trial courts should not "second guess the decisions made in the political arena," but offers no citations or support for this assertion. Because he has not developed this argument sufficiently to warrant appellate review, we decline to address it. *In the Matter of Bazemore & Jack*, 153 N.H. 351, 356 (2006).

## III. Indemnification

Nadeau next contends that the trial court erred by failing to rule that he was entitled to the benefit of the indemnification and hold harmless provisions of his original employment contract. He argues that the trial court plainly erred by ruling that the indemnification provision was invalid because it was contained within the rescinded separation agreement, when in fact it was contained in his original employment contract. EDFP argues that this issue was not raised below and, thus, was not preserved for appeal.

■ Our plain error rule, however, allows us to consider errors not brought to the attention of the trial court. *Id.* Nonetheless, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *State v. MacInnes*, 151 N.H. 732, 736-37 (2005). For us to find error under the rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Id.* at 737. Even assuming that there was error in this case, and that the error was plain, the burden is on

the plaintiff to prove that the error affected substantial rights. *See State v. Emery*, 152 N.H. 783, 787 (2005).

After reviewing the record, we agree with EDFP and find this issue is not preserved for our review. "[P]arties may not have judicial review of matters not raised in the forum of trial." *Miller v. Blackden*, 154 N.H. 448, 456 (2006). Nor has Nadeau met his burden of proving plain error. *See Emery*, 152 N.H. at 787.

*IV. Sufficiency of the Evidence*

Nadeau next argues that the trial court erred when it found that his Massachusetts job opportunity was all but assured before the November 23, 2004 meeting. He asserts that there is insufficient evidence to support this finding.

We will affirm the trial court's factual findings unless they are unsupported by the evidence. *Osman v. Gagnon*, 152 N.H. 359, 361 (2005). We find the evidence sufficient to support the trial court's finding that Nadeau had secured the Massachusetts job as of November 23, 2004. An official connected with the hiring in Massachusetts testified in his deposition that after the interviews on November 22, 2004, "counsel deliberated, had discussion with the Fire Marshall and made a decision to offer the position to Mr. Nadeau and to continue in the process of hiring." On the morning of the November 23 meeting, Nadeau was informed of the decision and he fielded a congratulatory call from a Derry firefighter, who testified that he had learned of the news from the president of the Professional Firefighters of New Hampshire.

As for Nadeau's argument that he would not have taken the Massachusetts job had the more generous severance package not been approved, the only testimony on this point was from Nadeau himself. The fact finder may accept or reject, in whole or in part, the testimony of any witness or party. *Brent v. Paquette*, 132 N.H. 415, 418 (1989). Additionally, the trier of fact is not required to believe even uncontroverted testimony. *Id.* In this case, the trial court did not believe Nadeau, finding his credibility "suspect."

*Affirmed.*

DUGGAN, GALWAY and HICKS, JJ., concurred.