# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0185, <u>State of New Hampshire v. Jonathan Dodge a/k/a Brian Smith</u>, the court on November 14, 2016, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Jonathan Dodge, appeals his felony conviction on one count of issuing a bad check. <u>See</u> RSA 638:4 (2007) (amended 2010). He argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he issued a bad check in violation of RSA 638:4, I. He also argues that the Superior Court (<u>Abramson</u>, J.) erred when it declined to retroactively apply an amendment to RSA 638:4 that would have resulted in a lesser sentence. We affirm.

The jury could have found the following facts. On Saturday, March 29, 2008, the defendant cashed a check at Service Credit Union (SCU) in Manchester. The defendant was not a member of SCU. The check was dated March 29, 2008, and was made payable to the defendant in the amount of $749.78. The check showed the purported issuer and account holder to be an Ohio company named Ellison Construction Inc.—spelled "Ellison <u>Constrution</u> Inc." on the check (emphasis added). The check appeared to be drawn on a Citizens Bank in Ohio. The check appeared to have been signed by "Michael Eaton." The defendant endorsed the back of the check before cashing it.

The next business day, SCU sent the check to Citizens Bank for payment. However, Citizens Bank returned the check to SCU without making payment because the check had been drawn on an invalid account. SCU thereafter attempted to collect the $749.78, plus fees, from the defendant, but SCU's efforts to contact the defendant were unsuccessful. SCU never received any payment from the defendant.

In November 2008, the defendant was arrested and charged with issuing a bad check. As he was being transported to the police station, the defendant stated that he had "never been to Manchester" and that he "had no idea what [the arresting officer] was talking about." However, after reviewing the arrest warrant affidavit at the police station, the defendant told the arresting officer that he had received a check as payment for cabinets that he had built, and that he had not known that the check was "no good."

A second officer conducted a post-arrest interview with the defendant, during which the defendant acknowledged that he had endorsed and cashed the check. The defendant claimed that a company had responded to his online advertisement for cabinets, and that he had received the check in the mail once the cabinets had been completed. The defendant told the officer that he had cashed the check on the day that he had received it, and that the next day, a person driving a truck marked with an "Ellison Construction" logo had picked up the cabinets. Despite the officer's offer to investigate this third party, the defendant never provided the officer any supporting information or documentation about the alleged transaction, such as an invoice or purchase order.

The interviewing officer conducted a general Google search for Ellison Construction and examined the Ohio Secretary of State's online archive of registered companies. At trial, the officer testified that the company could not be found using Google, and that his search of the Ohio Secretary of State's records showed that no company named "Ellison Construction Inc." had ever been incorporated or registered to do business in the state.

The defendant's case went to trial in May 2010. The State proceeded on the theory that the defendant had issued the check and concocted the story about the cabinets. At the close of the State's case, the defendant moved to dismiss the charge, challenging the sufficiency of the evidence. The Superior Court (Mohl, J.) denied the motion. The jury found the defendant guilty. Although the defendant was originally scheduled for sentencing in January 2011, because he absconded, he was not sentenced until 2015. This appeal followed.

On appeal, the defendant first argues that the State presented insufficient evidence on three elements of the offense: (1) that he issued—as opposed to passed—a bad check; (2) that he issued the check knowingly; and (3) that the statutory exceptions did not apply. He further contends that he should have been sentenced under the amended version of RSA 638:4. We first address the defendant's sufficiency argument.

Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. State v. Houghton, 168 N.H. 269, 271 (2015). When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. We consider all of the evidence, and all reasonable inferences therefrom, in the light most favorable to the State. Id. We assume "all credibility resolutions in favor of the State." State v. Saunders, 164 N.H. 342, 351 (2012).

2

The parties agree that the evidence presented at trial was circumstantial. "When the evidence is solely circumstantial, it must exclude all reasonable conclusions except guilt." Houghton, 168 N.H. at 271 (quotation omitted). "Thus, we evaluate the evidence in the light most favorable to the State and determine whether the alternative conclusion is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." Id. "The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded." State v. Sanborn, 168 N.H. 400, 413 (2015) (quotation omitted).

RSA 638:4, I, provides that:

A person is guilty of issuing a bad check if he issues or passes a check for the payment of money and payment is refused by the drawee, except in cases where a legal stop payment order has been issued or where the drawee refuses payment for any other reason through no fault of the person who issued or passed the check.

(Emphasis added.) As to the first element, the defendant argues, and the State does not dispute, that the State proceeded against the defendant solely on the theory that he had issued, rather than passed, a bad check. Accordingly, we consider only whether the State presented sufficient evidence to prove that the defendant "issued" the check. Id.

The term "issue" is not defined in the statute or elsewhere in the Criminal Code. Relying upon the Uniform Commercial Code, see RSA 382-A:3-105(a) (2011), the trial court defined "issue" in the jury instructions as "the first delivery of an instrument by the maker or drawer of a check; that is, by the party who first issues the check." Because the defendant did not object to that instruction and does not challenge the instruction on appeal, we assume without deciding that the jury instruction was correct. See State v. Marshall, 162 N.H. 657, 670 (2011). Thus, the jury could conclude that the defendant issued the check if it determined that the defendant signed the check as the drawer—i.e., as the person undertaking to pay—and made the first delivery of the check to another. See State v. Tyler, 158 N.H. 776, 778 (2009) (stating that we "interpret jury instructions as a reasonable juror would have understood them"); see also RSA 382-A:3-103(a)(3), (5) (2011) (defining "[d]rawer" as "a person who signs or is identified in a draft as a person ordering payment" and "[m]aker" as "a person who signs or is identified in a note as a person undertaking to pay").

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the State, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that the defendant issued the check. The only reasonable inference from the evidence was that the check

3

originated with the defendant, rather than some unknown third party, and that the defendant signed the front of the check before making the first delivery of the check to SCU. Several reasonable determinations support this inference.

First, the jury could reasonably conclude that the check was not a genuine instrument. Citizens Bank returned the check because it was not associated with a valid account, and the evidence established that the putative issuer, an Ohio company named Ellison Construction Inc., did not exist. The fact that the word "construction" in the company's name was misspelled on the check—Ellison Constrution Inc.—also supports a finding that the check was not a genuine instrument issued by an existing company.

The jury could also reasonably conclude that, contrary to the defendant's claim, the defendant did not innocently receive the check in the stream of commerce. In evaluating the defendant's credibility and culpability, the jury was permitted "to consider [the] defendant's subsequent actions and explanations of [the transaction]." State v. Evans, 134 N.H. 378, 387 (1991). The jury could infer that the defendant's decision to cash the check on a Saturday at SCU, of which he was not a member, was an attempt to avoid detection. There also was evidence that the defendant evaded SCU's efforts to contact him: one letter sent to the defendant was returned unclaimed, and a SCU representative could not reach the defendant at the phone number he had provided when he cashed the check.

In addition, when he was arrested, the defendant denied that he had ever been to Manchester. However, after reading the arrest warrant affidavit, the defendant changed his story. He told officers that he had received the check as payment for cabinets that he had sold to a third party. During the investigation, the defendant did not provide the interviewing officer any evidence that might have corroborated his story. The jury could also find that the defendant's story, as related to the officers, was implausible. For example, he stated that the check had been mailed to him, even though the check was dated the same day he cashed it, and despite his claim that the third party arrived in New Hampshire the next day and picked up the cabinets.

Furthermore, the jury could conclude that the defendant had written the "Michael Eaton" signature, based upon a comparison of that signature to the defendant's endorsement on the back of the check. "[J]uries are . . . permitted to compare authenticated handwriting specimens against questioned documents." State v. Sands, 123 N.H. 570, 617 (1983). Taking all of this evidence together, the jury could reasonably conclude that the defendant did not innocently receive the check from a third party.

Accordingly, the evidence supported a finding that the defendant signed the check and made the first delivery. The check was not a genuine instrument and must have originated from someone. Given that the defendant

4

cashed the check, evaded SCU's efforts to contact him after the transaction, and made conflicting, implausible statements to police, the jury could reasonably conclude that the defendant issued the check. See Evans, 134 N.H. at 387.

In contrast, there was insufficient evidence to render the defendant's alternative explanation—the alleged online transaction—reasonable. The defendant's statements to police were the only evidence reasonably supporting his theory, and the jury could have found that the defendant was not credible. See State v. Briere, 138 N.H. 617, 622 (1994) ("In matters of credibility, we defer to the jury unless it acted unreasonably."). Thus, the defendant's alternative explanation is akin to that asserted by the defendant in State v. Chapman, 149 N.H. 753 (2003), a case in which we ruled that the circumstantial evidence against the defendant was sufficient, id. at 759.

In Chapman, the defendant, an employee of a department store, was charged with theft by unauthorized taking. Id. at 754-55. The State's theory was that the defendant had taken money from the store by fraudulently voiding transactions. Id. at 758-59. The evidence, which was circumstantial, showed that the defendant "was working at the store when all of the fraudulent voids were entered," that "when many of the voids took place, the defendant was the only employee working who was authorized to enter voids," and that "many fraudulent voids were entered just prior to or after a sale was entered under her initials." Id. at 758. On appeal, the defendant asserted that another employee could have entered the fraudulent voids. See id. at 758-59. However, we observed, "Aside from pure speculation that anybody could have committed this crime, there is nothing in the evidence to indicate that anyone other than the defendant was responsible." Id. at 759. On that basis, we affirmed the defendant's conviction. See id.

As in Chapman, we reject the notion that the circumstantial evidence in this case is insufficient based upon speculation that another person could have been responsible. Therefore, because the evidence presented at trial excluded all reasonable conclusions except that the defendant issued the check, we conclude that the State satisfied this element.

We next turn to the defendant's argument that the evidence was insufficient to prove that he acted with the requisite intent. To satisfy the intent element, the State was required to prove that the defendant issued the check "knowing or believing that the check would not be paid by the drawee." RSA 638:4, IV(b). Given the evidence summarized above—including the defendant's evasive conduct, together with his denials and statements to police—we conclude that the circumstantial evidence was sufficient to prove that the defendant knew or believed the check would not be paid by Citizens Bank. See Evans, 134 N.H. at 387.

The defendant also argues that the State did not disprove the applicability of the statutory exceptions to the offense. See RSA 638:4, I. We are not persuaded. A person is not liable under the statute if "a legal stop payment order has been issued" or if "the drawee refuses payment for any other reason through no fault of the person who issued or passed the check." Id. Contrary to the defendant's assertions, there was evidence that established the reason why Citizens Bank refused payment: a letter from SCU to the defendant stated that the check "was returned unpaid due to being an invalid account."

In sum, after considering the evidence and the reasonable inferences therefrom in the light most favorable to the State, we conclude that the evidence excluded all reasonable conclusions except guilt. Accordingly, we hold that the trial court did not err in denying the defendant's motion to dismiss.

The defendant finally argues that, based upon the 2010 amendment to RSA 638:4, he should have been sentenced for a class B misdemeanor, rather than a class B felony. In July 2010—two months after the defendant's conviction but before his sentencing in 2015—the legislature amended RSA 638:4 by modifying the classifications of certain offenses under the statute. See Laws 2010, 239:4. In pertinent part, the amendment changed the classification of the defendant's offense from a class B felony to a class B misdemeanor. Compare id., with RSA 638:4, IV(a)(2). The amendment took effect when it was signed into law. See Laws 2010, 239:14.

RSA 21:38 provides that "[n]o suit or prosecution, pending at the time of the repeal of any act, for any offense committed or for the recovery of a penalty or forfeiture incurred under the act so repealed, shall be affected by such repeal." Under this statute, the default rule is that an ameliorative sentencing amendment does not apply to a defendant who committed an offense prior to the amendment's effective date if the prosecution was pending at the time the amendment took effect. See State v. Carpentino, 166 N.H. 9, 13-14, 19-20, cert. denied, 134 S. Ct. 2709 (2014). However, RSA 21:38 "is intended only as a general rule of construction, which must give way if the legislature has unambiguously expressed an intent contrary to the statutory 'default' position it establishes." Id. at 14; see also RSA 21:1 (2012).

The defendant argues that the legislature manifested its intent "to apply the sentence amendment retrospectively." In support of his contention, he points to the following: (1) "the legislature made the amendment to RSA 638:4 effective immediately upon passage"; (2) two senators made statements at a legislative committee hearing that imply their understanding that the proposed amendment would apply retroactively; and (3) retroactive application is consistent with the legislature's goal of adjusting penalties to fit current

6

financial realities and would provide a smooth transition between sentencing regimes.

To resolve this issue, we must determine the legislature's intent. "We review matters involving statutory interpretation de novo." Carpentino, 166 N.H. at 13. In assessing a statute's meaning, "we first examine its language, and ascribe the plain and ordinary meaning to the words used." Id. We construe provisions of the Criminal Code "according to the fair import of their terms and to promote justice." RSA 625:3 (2016). "We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole." Carpentino, 166 N.H. at 13.

We conclude that there is no unambiguous indication that the legislature intended that the 2010 amendment apply retroactively. Nothing in the text of the amendment evidences such an intent. The fact that the legislature decided to make the legislation effective immediately upon signing by the Governor does not demonstrate the legislature's intent regarding retroactivity. See, e.g., Moore v. Califano, 633 F.2d 727, 732 (6th Cir. 1980) (noting that language in amendment providing that amendment would take effect upon enactment was "of little help" in determining whether it applied retroactively). This case is distinguishable from a case in which the legislature specifically provides for an effective date after the date of enactment, thereby making its intent reasonably inferable. See, e.g., State v. Banks, 108 N.H. 350, 352 (1967).

Nor are we persuaded that the statements made by the two legislators at the committee hearing are unambiguous expressions that they believed the act would apply retroactively. The issue of retroactivity was not explicitly discussed at the hearing, and the statements were made in the context of a more general discussion of the bill's purpose. Without more, the legislators' passing remarks are not probative of the legislature's intent. Cf. Deere & Co. v. State, 168 N.H. 460, 484 (2015) (noting that "[a]n isolated statement by the bill's sponsor during a floor debate . . . has little probative value regarding the legislature's intent in enacting the bill"), cert. denied, 84 U.S.L.W. 3557 (U.S. Oct. 3, 2016).

The defendant further contends that retroactive application is consistent with the legislature's goal of adjusting penalties to fit current financial realities and would provide a smooth transition between sentencing regimes. Even if we were to accept the defendant's assertion, the mere consistency between retroactive application and those policy considerations would not amount to the sort of "definitive expression of legislative intent regarding retroactive application" contemplated by Carpentino. Carpentino, 166 N.H. at 16.

To the extent that the defendant is asking us to adopt the federal standard for determining legislative intent in this context, see, e.g., Dorsey v. United States, 132 S. Ct. 2321, 2331 (2012) (stating that, under federal savings

7

statute, Congress may express its intent regarding retroactive application "by implication"), he did not make that argument in the trial court, and, therefore, his argument is not preserved.  See State v. Blackmer, 149 N.H. 47, 48 (2003) (stating that, generally, we do not review any issue that the defendant did not raise before the trial court).

Thus, RSA 21:38 controls.  Carpentino, 166 N.H. at 16.  Accordingly, we hold that the 2010 amendment to RSA 638:4, IV does not apply to the defendant's case, and that the trial court did not err by sentencing the defendant for a class B felony.  See RSA 638:4, IV(a)(2).  All other issues the defendant raised in his notice of appeal, but did not brief, are deemed waived. See Houghton, 168 N.H. at 274-75.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**